## State of Vermont v. Brian Forant

[719 A.2d 399]

No. 97-386

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed August 21, 1998

*William H. Sorrell,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *Henry Hinton,* Appellate Attorney, Montpelier, for Defendant-Appellant.

**Johnson, J.** Defendant appeals his conviction and sentence for the domestic assault of his wife. Defendant claims that (1) the trial court committed plain error when, while instructing the jury, it made a contradictory statement that the State's burden of disproving self-defense was by a preponderance of the evidence; and (2) the security measures taken by a victim of a crime and expenses incurred by a victim in preparation of and participation in a trial are not authorized by statute to be compensable as restitution. We disagree as to the first issue and affirm defendant's conviction. We agree, however, that the restitution order was unauthorized.

The evidence showed that at the time of the offense, defendant and Corinne Forant were married with four children. Upon returning home from work on the evening in question, defendant and his wife had an argument over household issues. While defendant was in a separate room, a fight ensued between two of the children in Corinne's presence in the kitchen. Corinne attempted to discipline one of the children, but the child responded by biting her leg. Corinne then attempted to spank the child, but instead struck the child's arm. Defendant entered the room and witnessed his wife hitting the child. Defendant then assaulted his wife by throwing her into a table, hitting her head on the floor, and striking her chin. Corinne Forant made numerous attempts to call the police, which defendant thwarted. At trial, defendant asserted a claim of self-defense and defense of his child. The court instructed the jury regarding self-defense in relevant part as follows:

> Since the evidence in this case does raise the issue of self-defense, the burden is on the State to prove *beyond a reasonable doubt* that the acts of the defendant were not done in self-defense. If the State fails to prove to your satisfaction *beyond a reasonable doubt* that the defendant did not act in self-defense, then the State has not met its

burden of proving that the use of force was unlawful and you must find the defendant not guilty.

. . . Thus, in order to overcome the defendant's claim of self-defense, the State must prove each of the following essential elements *by a preponderance of the evidence*: First, that the defendant did not reasonably believe that he was in imminent danger of immediate bodily harm; second, that the defendant did not reasonably believe that the use of force was necessary to avoid danger and; third, that the defendant did not use only that force which was reasonably necessary to repel his attacker.

. . . If you find that the State has established each of these elements *beyond a reasonable doubt*, then you may find that the claim of self-defense has not been successfully established."

(Emphasis added.)

The defense did not object to the jury instructions, and the jury returned a verdict of guilty. Defendant was sentenced to not less than eleven and not more than twelve months, all suspended except for sixty days on a work crew.

At the sentencing hearing, the victim requested restitution for the following: (1) security measures taken after the assault (the cost of changing her telephone number and for changing the locks on her home, $115.00), and (2) expenses incurred due to meetings with the prosecutor's office in preparation for trial and for attending court proceedings (lost wages due to missed work, $499.20, child care costs, $312.00, and mileage expenses, $67.50). Defendant argued that the items requested were not proper subjects of restitution under the restitution statute. The trial court ordered restitution for all of what was requested, totalling $993.70. Defendant now appeals, challenging the conviction and the restitution order.

## I.

Defendant first argues that the trial court committed error when it instructed the jury that the State could disprove self-defense by a preponderance of the evidence. We disagree. When the instructions are viewed in their entirety, defendant has failed to show that he was prejudiced by the reference.

Since the defendant failed to object to the jury instructions at trial, reversal is appropriate only if the court below committed plain error. See V.R.Cr.P. 30, 52(b); *State v. Pelican*, 160 Vt. 536, 538, 632

A.2d 24, 26 (1993). Plain errors are those that affect a defendant's substantial rights that were not brought to the trial court's attention. See V.R.Cr.P. 52(b). Plain error exists only in extraordinary situations where it is "obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." *State v. Streich*, 163 Vt. 331, 353, 658 A.2d 38, 53 (1995). When determining plain error in the content of jury instructions, we review the instructions in their entirety. See *Pelican*, 160 Vt. at 539, 632 A.2d at 26. If the charge as a whole is not misleading, there is no plain error. See *Streich*, 163 Vt. at 352-53, 658 A.2d at 53; *Pelican*, 160 Vt. at 539, 632 A.2d at 26.

■ Defendant is correct that the proper jury instruction is that the State must disprove self-defense beyond a reasonable doubt. See *State v. Bartlett*, 136 Vt. 142, 144, 385 A.2d 1109, 1110 (1978). The question is whether a single reference to a preponderance standard in the middle of the charge misled the jury. The court made three references to the State's burden of disproving self-defense as beyond a reasonable doubt, and one statement that the State could disprove self-defense by a preponderance of the evidence. This error went unnoticed by all, and in all probability was not noticed by the jury in light of the entire instruction. The jury did not ask for clarification on this issue. The error was not obvious and is unlikely to have confused the jury. Cf. *Streich*, 163 Vt. at 353, 658 A.2d at 53 (two isolated phrases in lengthy jury charge not plain error where court repeatedly instructed jury that State's burden of proof was beyond a reasonable doubt and charge as whole was not misleading). Defendant has failed to show that he was prejudiced by this instruction.

## II.

We turn now to whether the trial court erred in ordering defendant to pay the victim restitution for costs she incurred in meeting with the prosecutor and attending court proceedings and for security measures she took at home. Defendant argues first that the expenses his wife incurred in preparation for and participation in trial are costs of prosecution that are not taxable against him under 13 V.S.A. § 7172(b), and therefore may not be ordered as restitution.

■ Section 7172(b) states that the "[c]ost of prosecution shall not be taxed against a respondent in any criminal case." Similarly, § 7253 requires the cost of prosecution for a criminal case to be paid by the State. Although neither statute defines "cost of prosecution," we have

previously held that a defendant in a criminal case cannot be ordered to make restitution to the State for costs of a search warrant, subpoenas, continuance, term fees, travel fees, and attorney's fees. See *Fay v. Barber*, 72 Vt. 55, 57-58, 47 A. 180, 182 (1899); *In re Pierce*, 103 Vt. 438, 439, 156 A. 137, 138 (1931). If subpoenas and travel fees for witnesses are nontaxable costs of prosecution, it is logical to conclude that the expenses of a prosecution witness in attending and preparing for trial, even if voluntarily incurred, should be treated the same. The purpose of the restitution statute is not to shift the costs of prosecution to the defendant by providing a detour around the statutes placing that burden on the State. Therefore, despite our recognition that Corinne Forant's travel and child-care expenses are real costs to her, they are nonetheless so directly related to the cost of prosecution that they are not taxable to defendant under the present statutory scheme.

The State directs our attention to our recent decision in *State v. Lewis*, 167 Vt. 533, 711 A.2d 669 (1998). In *Lewis*, we held that the cost of extraditing a defendant after he escaped from custody and fled the jurisdiction were not costs of prosecution, and were properly chargeable to him as restitution. Because the defendant in *Lewis* was a fugitive from justice, the costs incurred to extradite and return him to the custody of the Commissioner were more closely related to restoring custodial authority on prior charges than to his subsequent prosecution for escape. The decision was limited to the specific facts of the case, see *id.* at 537, 711 A.2d at 672, and does not support the reimbursement of costs incident to a witness's preparation for or attendance at trial.

Whether the costs incurred by Corinne Forant to change the locks and telephone number at her home are subject to restitution presents a different question. Because these are not costs of prosecution, but are expenditures by a victim of a crime, we analyze them under the restitution statute. Defendant argues that the restitution statute is narrowly drawn and permits only direct rather than consequential losses. He contends the expenses incurred by his wife were for the purpose of improving her security, and were not to repair property damage inflicted by him. Therefore, he concludes that the expenditures were not directly related to the crime and are not compensable.

Section 7043 provides:

> (a) Restitution shall be considered in every case in which a victim of a crime has suffered a *material loss* or has incurred medical expenses. . . .

(b) When ordered, restitution may include;
(1) return of property wrongfully taken from the victim; or
(2) cash or installment payments to the victim or to the victim's compensation fund . . . to compensate for damages to the victim's property or person . . . .

13 V.S.A. § 7043 (emphasis added).

The statute is narrowly drawn, and damages to the victim's property or person are not defined or specified. As a result, our prior jurisprudence interpreting the statute has attempted to draw lines between categories of damage based on whether the sums requested were liquidated amounts that were readily ascertainable. Therefore, we have held that such damages as "hospital bills, property value, and lost employment income" and easily measurable lost profits resulting from stolen goods are compensable. *State v. Jarvis*, 146 Vt. 636, 638-39, 509 A.2d 1005, 1006 (1986); accord *State v. May*, 166 Vt. 41, 43-44, 689 A.2d 1075, 1077 (1996). Damages that are not readily ascertainable, such as pain and suffering, emotional trauma, loss of earning capacity, and wrongful death awards are not proper subjects of restitution under § 7043, because "[a] restitution order in a criminal case is not the same as, and is no substitute for, an award of civil damages." *Jarvis*, 146 Vt. at 640, 509 A.2d at 1007; cf. *In re Fadden*, 148 Vt. 116, 122, 530 A.2d 560, 564 (1987) (restitution for emotional damage upheld on ground that it was product of voluntary plea bargain).

Here, because the victim spent money to change the locks and obtain a new telephone number, there is no dispute as to the amount of damages. In a very limited sense, the amounts are liquidated and ascertainable. Indeed, if the victim had hired a security guard to protect her, the amount of the guard's wages would be liquidated and ascertainable. The more pertinent question for this case is whether the statute permits recovery of damages that were not directly caused by defendant's crime. In other words, if defendant did not directly damage the locks or use the telephone number to harass the victim, does the statute permit restitution?

■ We agree with defendant that to support an award of restitution the State must demonstrate both the amount of the victim's loss and causation between the defendant's criminal act and the victim's loss. See *State v. VanDusen*, 166 Vt. 240, 244, 691 A.2d 1053, 1055 (1997). An order of restitution must relate directly to the damage

caused by the defendant's criminal act for which he was convicted. If there is no direct link between the crime and the restitution, the claimed damage may not be awarded under § 7043. See *State v. Knapp*, 147 Vt. 56, 60, 509 A.2d 1010, 1012 (1986); *State v. Barnett*, 110 Vt. 221, 231-32, 3 A.2d 521, 525 (1939).

Our requirement that the injury be directly linked to the crime is supported by other statutes relating to victim's compensation. See *Lewis*, 167 Vt. at 539-40, 711 A.2d at 672-73. The statute creating and governing the Victim's Compensation Board defines "victim" as "a person who sustains injury or death as a *direct result* of the commission or the attempted commission of a crime." 13 V.S.A. § 5351(7)(A) (emphasis added). Victims are eligible for compensation for pecuniary losses sustained as a result of the crime. See *id.* § 5353(g). "Pecuniary loss" is defined as the amount of medical or medically-related expenses, lost wages, and any other expenses that the Victim's Compensation Board considers were a *direct result* of the crime. See *id.* § 5351(5). Also, in § 5301(4), governing the victim's assistance program, another reference is made to the injury having to be a direct result of the crime. Here, "victim" is defined as "a person who sustains physical, emotional or financial injury or death as a *direct result* of the commission . . . of a crime." *Id.* § 5301(4) (emphasis added).

The expenses ordered as restitution in this case cannot be viewed as the direct result of defendant's crime of domestic assault. They were indirect costs, resulting from Corinne Forant's fear of her husband's access to the house and concern that he would harass her using the telephone. These concerns, although real, were related to fear of future crimes, not the crime for which defendant was convicted and sentenced. Even if one views the victim's fear as related to the crime committed against her, expenditures made by her to restore her sense of security relate more to emotional distress damages. Such damages are not recoverable as restitution under our prior holding in *Jarvis*, 146 Vt. at 638, 509 A.2d at 1006, because they are generally not liquidated and ascertainable. The fact that Corinne Forant reduced her damages to an amount certain by making specified expenditures does not make what are essentially emotional distress damages liquidated and ascertainable under § 7043. See *id.* at 639, 509 A.2d at 1006-07 (since civil liability is not a prerequisite to restitution and victim retains right to bring civil action, restitution generally should be more limited in scope than civil damages). Therefore, they are not compensable under § 7043.

The State urges a different result based on cases from other jurisdictions, including Arizona and Wisconsin, in which similar costs have been allowed, arguing that the courts possess broad discretion in awarding restitution. Indeed, we have previously recognized Arizona's restitution statute as most similar. See *May*, 166 Vt. at 47, 689 A.2d at 1079 (Dooley, J., concurring). Restitution is wholly statutory, however, and the outcomes in cases of other jurisdictions are dependent on different statutory language. More importantly, these statutes differ from Vermont's restitution statute in ways that are critical to this case.

First, the definitions of who may recover losses and how those losses are defined are broader under Arizona law. Arizona's statute allows for restitution to "any person" who suffered a loss as a result of a crime, while Vermont's restitution law specifically refers to a "victim." Compare Ariz. Rev. Stat. Ann. § 13-804 (West Supp. 1997) with 13 V.S.A. § 7043; cf. *State v. Webb*, 151 Vt. 200, 202, 559 A.2d 658, 660 (1989) (insurance company that actually suffered loss from defendant's crime could not recover as "victim"). Second, Arizona's statute states that an "economic loss" is recoverable as restitution, while Vermont's refers to a "material loss." Compare Ariz. Rev. Stat. Ann. § 13-603(C) with 13 V.S.A. § 7043. The broader definitions are reflected in the case law interpreting the statutes and has resulted in a more expansive view of the meaning of direct loss.

The general rule in Arizona is that the loss must directly flow from or be a direct result of the defendant's offense to be an "economic loss" compensable by restitution. The statute mandates a "but for" analysis, and Arizona courts utilize a foreseeability or natural consequence analysis to determine the question. See Ariz. Rev. Stat. Ann. § 13-105(14); *State v. Morris*, 839 P.2d 434, 437-38 (Ariz. Ct. App. 1992); *State v. Wideman*, 798 P.2d 1373, 1378 (Ariz. Ct. App. 1990). For example, in *Morris*, the Arizona Court of Appeals held that a defendant was required to pay restitution to a victim for property damage to her automobile, expenses for rental cars, taxi charges, and the cost of telephone calls made as a result of damage from an accident caused by the defendant. See 839 P.2d at 438-39. The court held that these expenses were proper subjects of a restitution order because they were "the natural consequences" of the defendant's conduct that would not have occurred but for the defendant driving while under the influence. *Id.* at 439.

Although Arizona disallows restitution for pain and suffering in its statute, as we have in Vermont through case law, it has construed

"economic loss" to permit restitution for ascertainable measures victims have taken on the basis of emotional trauma. See Ariz. Rev. Stat. Ann. § 13-105(14); *Wideman*, 798 P.2d at 1378; *State v. Brady*, 819 P.2d 1033, 1034 (Ariz. Ct. App. 1991). In *Wideman*, upon sentencing the defendant for first degree murder and theft of the victim's automobile, the defendant was ordered to pay restitution to the victim's family for costs of mental health counseling they incurred after the victim's death. See 798 P.2d at 1378. The court held that even though pain and suffering is not an "economic loss," the costs of alleviating the pain and suffering were "economic losses" compensable by restitution under the Arizona statute. See *id.* The court found the counseling expenses to be an "economic loss" because they were directly attributable to the defendant's conduct. See *id.* On a similar rationale, the *Brady* court allowed economic losses attributable to establishing a new residence for a rape victim to restore her "equanimity." *Brady*, 819 P.2d at 1034.

Wisconsin's approach to restitution is similar, and its courts have granted restitution for the kind of expenses allowed by the trial court below. See, e.g., *State v. Behnke*, 553 N.W.2d 265, 273 (Wis. Ct. App. 1996). Again, the cost of changing locks were compensable in *Behnke* because the Wisconsin statute allowed them as "special damage," which is defined in that statute as any specific expenditure made by a victim because of the crime. See *id.* at 273.

■ It is apparent that our own restitution statute is much narrower, requiring that a compensable loss be material and flow from a direct injury to person or property, implying that consequential economic losses are not permitted. Therefore, the cases with similar facts from other jurisdictions do not provide persuasive authority for permissible restitution in Vermont. Generally, we have viewed restitution damages more narrowly than damages in a civil case. See *State v. Fontaine*, 167 Vt. 529, 532, 711 A.2d 667, 669 (1998) (reversing trial court order requiring defendant to pay child support to children of fatal motor vehicle accident victim). As stated above, restitution is not a substitute for an award of civil damages. See *Jarvis*, 146 Vt. at 640, 509 A.2d at 1007. Moreover, in Vermont, the damages claimed herein may very well be compensable from the Victim's Compensation Board, as the State claims. See 13 V.S.A. § 5352. The discretion of the court to order restitution as part of the sentencing process, however, is more limited and does not extend to the costs ordered here.

*Defendant's conviction is affirmed. The restitution order is vacated.*