2012 VT 51

**STATE of Vermont v. Chase A. TETRAULT**

[54 A.3d 146]

No. 11-068

¶ 1. July 5, 2012. Defendant Chase A. Tetrault and friends broke into a remote camp owned by A.C. ("camp owner"), damaging appliances and personal items. Defendant pled guilty to one count of unlawful trespass and the State requested restitution. At the restitution hearing, defendant argued that camp owner should be able to recover only the actual value of the damaged items at the time of the trespass, not their replacement cost. He also argued restitution could not be had for items that were not damaged, but merely used. The trial judge disagreed, and awarded camp owner the full amount of claimed damages. On appeal, defendant raises the same two arguments, along with a new argument that restitution is not appropriate at all in this case, because the crime of unlawful trespass does not include an element of destruction of property. We affirm.

¶ 2. State troopers responded to a report of a break-in and theft at a remote camp in Newbury. The property owner reported that four guns had been stolen, and he suspected the thieves were squatting at camp owner's neighboring property. The troopers confirmed with camp owner that he had not given anyone permission to be at his camp, and then confronted one of the squatters and dis-

covered the four stolen guns. A number of charges were brought against at least three individuals, including defendant, who was initially charged with burglary, grand larceny, and unlawful trespass.

¶ 3. Defendant and the State reached a plea agreement in which defendant would plead guilty to unlawful trespass, 13 V.S.A. § 3705(a), (c), and serve a sentence of zero to forty-one days in jail, with credit for time served. The State dropped the two remaining charges. The plea agreement included a requested restitution hearing, and was undertaken with mutual expectation of this restitution claim.

¶ 4. At the hearing, the only testimony came from camp owner. Camp owner provided a list of items for which he sought restitution: mattresses, sheets, and blankets; pots, pans, silverware, and dishes; microwave and toaster; water pump; throw rugs; locks; propane; and two days of labor. The trial court found these items totaled $1198.11, and can be roughly divided into two groups: items that were actually damaged or destroyed, and items that were merely used or soiled.

¶ 5. As to the items that were actually damaged or destroyed, camp owner testified that the microwave and toaster were both rendered inoperable. He replaced them with comparable models from Wal-Mart for $69.96 and $29.97, respectively. A lock had been pried off his shed and thrown away, so he purchased a new lock for $20. The trespassers brought dogs that soiled the throw rugs at the camp, so camp owner replaced them for $38.91, also from Wal-Mart. The squatters used up the propane at a cost of $60. Finally, the squatters had burned out the water pump and that had to be replaced at a cost of $149. Defendant agreed that these items were, in fact, damaged, destroyed, or consumed, and that camp owner should be compensated for his losses. However, he argued that the proper measure of restitution for these items was their actual value at the time of the loss, not their replacement value. The court rejected this argument, noting that camp owner replaced the destroyed items with inexpensive goods and that he had not been "extravagant."

¶ 6. Camp owner also testified as to the items that were merely used or soiled. He replaced three mattresses at a cost of $129 each. Though he conceded they were not actually damaged, because squatters slept in them, he "wouldn't want to sleep in them again." The same principle applied to the sheets and blankets, replaced for $32.95 and $50.46, respectively. He testified that the squatters used his pots, pans, dishes, and silverware, and that food was burned on to the pots and pans and left there for days, and he "wouldn't want to use them again," though he again conceded they were not fatally damaged. He replaced the kitchenware from Wal-Mart at a total cost of $129.90. Defendant argued at the hearing that these items were not damaged, and he should not have to pay for them. He reasoned that replacing these items amounted to a payment for emotional distress, which is not permitted under our restitution laws. See *State v. Jarvis*, 146 Vt. 636, 639, 509 A.2d 1005, 1006 (1986) ("Damages that are not readily ascertainable, such as pain and suffering, emotional trauma, loss of earning capacity, and wrongful death awards are not proper subjects of restitution.").

¶ 7. The court also rejected this argument, holding that the restitution statute, 13 V.S.A. § 5301(4), does not require that the items be damaged, but only requires a link between the loss and the offense; that is, the loss must be "a direct result of the commission . . . of a crime." Even though these items were not rendered unusable, they were used by the squatters, and their actions deprived camp owner of their use. The court therefore found the losses were a direct result of the crime and awarded the full amount of restitution sought.

¶ 8. Defendant now renews his arguments that the damaged items should have been replaced at their actual value at the time of the trespass, and that the merely soiled or used items should not have been replaced at all. Defendant also asks us to consider — for the first time on appeal — whether 13 V.S.A. § 5301(4) precludes the State from seeking restitution in this case because the crime of unlawful trespass does not contain an element of destruction of property. A person is guilty of unlawful trespass if he "enters a building other than a residence, whose normal access is locked," without legal authority or the consent of the person in lawful possession. 13 V.S.A. § 3705(a), (c). He argues that, while camp owner's property would not have been damaged but for the unlawful trespass, the damages did not arise as a *direct result* of the criminal conduct for which he was convicted.

¶ 9. "Vermont law requires there to be a direct link between the loss for which restitution is ordered and the conduct for which defendant has been convicted." *State v. LaFlam*, 2008 VT 108, ¶ 17, 184 Vt. 629, 965 A.2d 519 (mem.). However, we need not address the merits of this argument as defendant failed to argue at the restitution hearing that unlawful trespass could not be the predicate offense for an award of restitution for damages arising from his other actions while engaging in the trespass. See *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 7, 185 Vt. 627, 970 A.2d 1281 (mem.) (arguments not raised below are waived on appeal). We note that defendant did raise this argument in a motion to dismiss the restitution claim filed several weeks after the restitution hearing. However, since defendant, as noted earlier, had advance notice of camp owner's specific restitution claim and did not object before or during the restitution hearing, there is no reason to depart from the rule that post-judgment motions are generally not sufficient to avoid a waiver.

See *State v. Sanders*, 168 Vt. 60, 63, 716 A.2d 11, 14 (1998) (claims raised for the first time in motion for new trial are not preserved for appellate review); *In re Entergy Nuclear Vermont Yankee, LLC*, 2007 VT 103, ¶ 15, 182 Vt. 340, 939 A.2d 504 ("Although in certain circumstances litigants may preserve issues in post-judgment motions, they may not do so when those issues should have been raised in earlier proceedings before the Board.").

¶ 10. Defendant next argues that the court erred in ordering him to pay restitution for items that were not actually damaged (i.e., the bedding and kitchenware), but simply used. We begin by noting that "[t]he trial court has discretion to determine the proper amount of restitution." *State v. Lewis*, 167 Vt. 533, 540, 711 A.2d 669, 674 (1998). The restitution statute defines "victim" as "a person who sustains physical, emotional or financial injury or death as a *direct result* of the commission or attempted commission of a crime." 13 V.S.A. § 5301(4) (emphasis added). See *State v. Forant*, 168 Vt. 217, 222-23, 719 A.2d 399, 403 (1998) ("An order of restitution must relate directly to the damage caused by the defendant's criminal act for which he was convicted."). We have previously upheld a restitution award for the value of deer in a case in which the defendant drove his car through the gate of a hunting preserve, allowing valuable red deer to escape. *State v. Driscoll*, 2008 VT 101, 184 Vt. 381, 964 A.2d 1172. In *Driscoll*, defendant pled nolo contendere to unlawful mischief, a crime based on damage to property. We were not asked in *Driscoll* to determine whether the defendant's act of unlawful mischief (damaging the gate) directly related to the landowner's loss of deer. However, we held that "[w]e have no difficulty affirming the court's determination that the deer were missing and left the property as a result of defendant's damage to the gate." *Id.* ¶ 10. In the

present case, without deciding categorically what types of damages are appropriate for restitution following a conviction of unlawful trespass, we conclude that the trial court properly exercised its discretion in determining that defendant's acts directly led to camp owner's financial injury.

¶ 11. In evaluating whether camp owner could receive compensation for the items that were not actually damaged, the court found that camp owner's "mattresses had been slept on, [his] sheets had been used, [defendants'] food had been left in pots and pans." Implicit in this statement is a finding of a disturbing violation of personal privacy. Mattresses and linens can be vectors for disease and parasites. Burned-on food — left for days in this case — can require extensive cleaning of cookware, a task made even more offensive due to the unknown nature of its use by the trespassers. Without knowing the identity of the squatters or the precise activities they undertook while illegally occupying his home, the court obviously found it reasonable for camp owner to be uncomfortable using these personal items ever again. Moreover, the court found that camp owner's "measure of replacement value is very reasonable," having purchased all the items at Wal-Mart. The court was well within its discretion to authorize camp owner to replace these items at a relatively modest cost.

¶ 12. Finally, defendant argues that even if the court was correct in awarding restitution, the proper measure of damages should have been the actual value of the items at the time of the trespass, not their replacement cost. He cites *State v. Ellis* for the proposition that "[t]he purpose of restitution is to make the victim whole, not to punish. Nor is the purpose to give the victim a windfall." 838 P.2d 1310, 1311 (Ariz. Ct. App. 1992) (citation omitted). He also cites to our decision in *State v. Curtis*, in which we held that an

automobile damaged through a criminal act should be valued at its so-called "blue book" fair market value for the purpose of restitution. 140 Vt. 621, 622, 443 A.2d 454, 455 (1982).

¶ 13. While the value of a used microwave or toaster would be lower than the value of the identical appliances in new condition, defendant's suggestion that the replacement cost can be estimated by what the items might fetch at a yard sale is pettifoggery. While defendant is correct that fair market value is the proper measure of damages for items with a readily ascertainable value, there is no "blue book" for used toasters or microwaves. A victim of a home invasion should not have to visit local thrift stores or pore through the classifieds to determine the value of a used blender. It was hardly a windfall for camp owner to replace items ruined by defendant and his friends' criminal acts. The court was well within its discretion in awarding camp owner restitution in the amount sought.

*Affirmed.*