2012 VT 91

### State of Vermont v. Donald Shepherd

[60 A.3d 213]

No. 10-336

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 26, 2012

*Diane C. Wheeler*, Franklin and Grand Isle Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

*Barbara Prine, Vermont Legal Aid, Inc.*, Burlington, for Amicus Curiae.

¶ 1. **Reiber, C.J.** In July 2010, defendant pled guilty to charges of aggravated sexual assault, lewd and lascivious conduct with a

child, and sexual exploitation of a child in exchange for dismissal of several other pending charges. His victim was a ten-year-old child. Defendant is serving a sentence of twenty-five years to life in prison. At issue in this appeal is the court-ordered restitution for relocation expenses of the victim and his family. We hold that the trial court did not abuse its discretion in finding that the relocation in this case was a direct result of defendant's criminal acts. Restitution is therefore appropriate, and we affirm.

¶ 2. Mother has four children, including the victim, Juvenile 1, and his twin brother, Juvenile 2. Mother suffers from fibromyalgia, and Juvenile 2 has autism spectrum disorder and kidney diseases that cause him constant pain. Mother hired defendant as a live-in nanny to help care for Juvenile 2. At the time, the family lived in South Hero, a small, lightly populated town in rural Grand Isle County. Defendant sexually assaulted Juvenile 1 numerous times over a two-month period in 2009.

¶ 3. Following defendant's arrest, the case attracted media attention, and Juvenile 1's identity became known at his school and in the community at large. According to his mother, Juvenile 1 began to suffer adverse effects: he was ignored by other children at school and was very anxious about being known as the victim. She claimed the school staff treated him differently. She reported that the family as a whole was ostracized; if they went to a school play, no one would sit near them. Juvenile 1 was placed in therapy, and the counselor and his mother concluded that it would be necessary to move away from Grand Isle County.

¶ 4. In considering where to move, mother had two requirements: She wanted their new home to be far enough away that Juvenile 1 would be able to start fresh without the community knowing about his past victimization, and she wanted to be close to family in a state that offered sufficient resources for Juvenile 2's needs. Mother's decision boiled down to two places, both of which were more than 2000 miles from Grand Isle County. Mother decided on Hawaii because there was existing family support there and the state offered generous assistance to children with special needs such as Juvenile 2. The move ultimately cost $15,887.78.

¶ 5. The Victims' Compensation Program had awarded compensation for and on behalf of Juvenile 1 in the amount of $3900.68, which included $1645.00 for mental health counseling, $255.68 for mileage, and $2000 for rent/relocation costs. The program peti-

tioned the court for restitution from defendant for the award. The State also filed a request on behalf of Juvenile 1's mother for a judgment in the amount of $13,887.78 for relocation expenses over and above the $2000 paid by Victims' Compensation. The court initially denied both requests for relocation expenses, finding that there was "no 'direct link' between the crime committed and the victim's decision to relocate. Relocation was not a necessary result of the defendant's crime." The state's attorney moved for reconsideration. Vermont Legal Aid also filed a motion for reconsideration on behalf of the victim. Following a hearing, the trial court issued an order granting restitution for the move to Hawaii in the amount of $13,887.78. The court found that defendant's "criminal behavior, in a small Vermont town, [led] directly to the family's ostracization, which resulted in the relocation. The requisite causal connection [between the crime and the loss] exists." The court also explained that an order of restitution in this case would not constitute an impermissible award for pain and suffering, because the relocation expenses were "ascertainable and based on the disruption of the family's life, not some subjective emotional harm."

¶ 6. On appeal, defendant argues that the relocation expenses incurred by Juvenile 1 and his family were "tangential costs incurred as a result of [defendant's] criminal conduct, but not costs caused directly by his crime." Defendant also argues that Hawaii is an unreasonable new location.

¶ 7. We review the trial court's award of restitution for abuse of discretion. See *State v. Tetrault*, 2012 VT 51, ¶ 10, 192 Vt. 616, 54 A.3d 146 (mem.) (holding that "trial court properly exercised its discretion in determining that defendant's acts directly led to . . . injury"); *State v. Kenvin*, 2011 VT 123, ¶ 6, 191 Vt. 30, 38 A.3d 26 (restitution orders reviewed for abuse of discretion).

■ ¶ 8. Vermont's criminal restitution statute requires a judge to consider restitution in "every case in which a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). A material loss means "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." *Id.* § 7043(a)(2). We have held under this statute that there must be a "direct link between the loss for which restitution is ordered and the conduct for which defendant has been convicted." *State v. LaFlam*, 2008 VT 108, ¶ 17, 184 Vt. 629, 965 A.2d 519 (mem.).

■ ■ ¶ 9. Defendant's assertion that there is no direct link between the crime for which he was convicted and the victim's loss is unfounded. Defendant contends that there were intervening factors which caused the family to move. In general, a proximate-cause analysis is appropriate in determining whether restitution should be granted. See *LaFlam*, 2008 VT 108, ¶ 11. Here, however, Juvenile 1's emotional injury and ostracization in a small town were the natural and probable consequences of the sexual assaults, thereby necessitating relocation. Cf. *Estate of Sumner v. Dep't of Soc. & Rehab. Servs.*, 162 Vt. 628, 629, 649 A.2d 1034, 1036 (1994) (mem.) (noting that efficient, intervening cause is one which is "new and independent" and unanticipated). As the trial court found, Juvenile 1 suffered emotional injury as a result of the sexual assaults, an injury that manifested itself in an inability to live a normal life in the small Vermont town where his peers knew about the sexual assaults he had suffered and ostracized him as a result. Juvenile 1 was no longer invited to friends' houses, parents instructed their children to avoid him, he was treated differently by school staff, and members of the community ostracized the entire family. The victim's counselor opined that Juvenile 1 could not begin the healing process without relocating. Given the severity of the crime in question and the assessment of Juvenile 1's counselor, the trial court's findings that moving to Hawaii would "allow [Juvenile 1] to restart his life in a safe, secure environment away from the anxiety that his victimization would be discovered" and that the requisite causal connection between the crime and the loss exists are supported by the record and the law.

¶ 10. Defendant observes that the family selected Hawaii as opposed to another destination for particular, intervening reasons. This is of no moment. Such an argument conflates the family's reason for relocating with the family's reasons for relocating to Hawaii. The trial court found that the decision to relocate was a direct result of defendant's crime. The secondary decision of where to relocate necessarily took into account the unique needs of the family as a whole, as Juvenile 1 is a minor. Juvenile 1's brother suffers from severe disabilities that require more care than Juvenile 1's mother, who suffers from fibromyalgia, can provide by herself. It is evident that Hawaii was chosen because the family has relatives in Hawaii who can help care for the victim's disabled sibling. In addition, Hawaii provides generous disability benefits. In light of these unique circumstances, the trial

court found the choice of Hawaii to be reasonable, a determination that is well within its discretion as factfinder.

¶ 11. The dissent urges that the relocation costs do not constitute material loss, but are more akin to "emotional damages." *Post*, ¶ 20. The fact that Juvenile 1's injury was emotional, however, does not necessarily lead to the dissent's conclusion that the relocation costs are more like damages for pain and suffering or emotional trauma, which are not proper subjects of restitution under 13 V.S.A. § 7043. Indeed, our restitution statute defines a "victim" as one who has suffered a physical, financial, *or emotional injury* as a result of a crime. 13 V.S.A. § 5301(4). The focus in awarding restitution to a victim is not the type of injury sustained, but rather the link between the damages and the crime. If readily ascertainable costs associated with emotional injury arising directly from a crime were not within the scope of restitution, as the dissent suggests, restitution would not cover reasonable counseling expenses for victims of crime. We believe that is an unduly narrow construction of the restitution statute.

¶ 12. It is true that "[d]amages that are not readily ascertainable, such as pain and suffering [or] emotional trauma . . . are not proper subjects of restitution." *State v. Jarvis*, 146 Vt. 636, 639, 509 A.2d 1005, 1006 (1986). Here, however, the relocation expenses have a specific monetary value. As the trial court noted, "the relocation expenses are certainly ascertainable and are based on the disruption of the family's life, not some subjective emotional harm."[1] In concluding that relocation expenses are "not the equivalent of hospital bills, lost employment income, and property damage," *post*, ¶ 19, the dissent would unduly limit the reach of § 7043. See *Jarvis*, 146 Vt. at 638, 509 A.2d at 1006 ("[O]nly liquidated amounts which are easily ascertained and measured are recoverable under the legislative scheme. These amounts include, *but are not necessarily limited to*, hospital bills, property value, and lost employment income.") (emphasis

---

[1] The dissent places great emphasis on our holding in *State v. Forant*, 168 Vt. 217, 222-23, 719 A.2d 399, 402-03 (1998), that the restitution statute did not cover the expenses a domestic-assault victim incurred in changing her locks and phone number. *Post*, ¶ 19. The emphasis is misplaced. As the dissent correctly notes, in *Forant* the victim's expenses were indirect costs resulting from a fear of potential *future* harassment. 168 Vt. at 223, 719 A.2d at 403. Here, as the trial court observed, the "family's move was based not on a fear of being ostracized but on having already been ostracized."

added). The inclusion of "uninsured out-of-pocket monetary loss" as a form of "material loss" indicates that § 7043 is expansive enough to permit restitution of relocation costs, provided the trial court finds, as it did here, that there is a direct link between the crime and the costs incurred.

¶ 13. In this case, the trial court weighed the grievous nature of the crime in question, as well as its profound effect on the victim, and concluded that there was a direct link between the crime and the material loss incurred in this particular relocation. As the trial court has discretion in making this determination, we defer to its judgment and affirm.[2]

*Affirmed.*

¶ 14. **Skoglund, J.,** dissenting. The majority finds that assigning to defendant the costs of relocating a family to Hawaii is an appropriate use of the restitution statute. I dissent.

¶ 15. Defendant sexually assaulted Juvenile 1 numerous times over a two-month period in 2009. The crime attracted media attention and Juvenile 1 experienced anxiety about being identified as the victim of the sexual abuse. He was afforded therapy. His mother felt that the entire family was being ostracized by the community. Eventually mother decided to move the family away from Grand Isle County to give her son a fresh start in a community that did not know about his victimization. She decided to move to Hawaii because mother had family there and because Hawaii would provide assistance to her other son, Juvenile 2, a child with special needs. The move ultimately cost $15,887.78.

¶ 16. Initially, the trial court found that "[r]elocation was not a necessary result of the defendant's crime." A different judge responded to a motion for reconsideration and granted restitution for the move to Hawaii. The majority adopts the court's ultimate conclusion that defendant's criminal behavior in a small Vermont town caused the family's perceived ostracism and resulted in the relocation. I cannot agree. If the embarrassment and distress that often visits any victim of a crime can be held to be a direct result of a criminal act, then all crime victims seeking to relocate can look to be reimbursed for moving expenses, especially given the

---

[2] Defendant challenges various statements made by amicus curiae in its brief. Because we have not relied upon those statements, defendant's request to strike is denied.

reality that the entire state of Vermont is a small town for purposes of identifying victims of major crimes. Further, it is difficult for this writer to catalog a perceived shunning as anything other than subjective emotional harm. Under the standard adopted by the majority, there will be no limits as to what can be considered the direct result of a crime. And, what material loss has this family suffered as a direct result of the sexual assault of Juvenile 1? Is loss of anonymity to be considered a material loss?

¶ 17. Determining a restitution award is discretionary with the trial court. *State v. VanDusen*, 166 Vt. 240, 245, 691 A.2d 1053, 1056 (1997). And, as defendant does not contest any of the court's findings of fact, this Court need only evaluate whether our restitution statute permits the award in this case. Restitution is considered when "a victim of a crime . . . has suffered a material loss." 13 V.S.A. § 7043(a)(1). A material loss means "uninsured property loss, uninsured out-of-pocket monetary loss, uninsured lost wages, and uninsured medical expenses." *Id.* § 7043(a)(2). Our case law requires a "direct link between the loss for which restitution is ordered and the conduct for which defendant has been convicted." *State v. LaFlam*, 2008 VT 108, ¶ 17, 184 Vt. 629, 965 A.2d 519 (mem.); see also *State v. Tetrault*, 2012 VT 51, ¶ 10, 192 Vt. 616, 54 A.3d 146 (mem.). We require "some form of proximate causation in addition to causation in fact," adopting the approach of the vast majority of other jurisdictions. *LaFlam*, 2008 VT 108, ¶ 11.

¶ 18. In *State v. Forant*, we held that the restitution statute is "narrowly drawn." 168 Vt. 217, 222, 719 A.2d 399, 402 (1998). In *Forant*, the defendant was convicted of domestic assault of his wife. Following the assault, the victim changed her locks and telephone number, even though the locks were not damaged and the defendant did not use the telephone to harass her. We addressed the question of whether the restitution statute covered the victim's expenses in making those changes. The defendant argued that these expenses were "for the purpose of improving her security, and were not to repair property damage inflicted by him." *Id.* at 221, 719 A.2d at 402. He reasoned that there was no direct link between his criminal acts and her expenses, and therefore the expenses were not compensable under the restitution statute. *Id.* We agreed, holding that the victim's expenses were "indirect costs," resulting from her fear of future harassment

by her husband. *Id.* at 223, 719 A.2d at 403. Perhaps most relevant to our present case, we held:

> Even if one views the victim's fear as related to the crime committed against her, expenditures made by her to restore her sense of security relate more to emotional distress damages. Such damages are not recoverable as restitution under our prior holding in [*State v. Jarvis*, 146 Vt. 636, 638, 509 A.2d 1005, 1006 (1986)], because they are generally not liquidated and ascertainable. The fact that [the victim] reduced her damages to an amount certain by making specified expenditures does not make what are essentially emotional distress damages liquidated and ascertainable under § 7043.

*Id.*

¶ 19. I cannot distinguish the situation presented in this case from the issue in *Forant*. The first reason for the family's relocation — that Juvenile 1 needed a fresh start in a new community where he would not feel identified and embarrassed by his victimization — is a claim for emotional damages. The cost of moving to another state to escape Juvenile 1's perceived loss of privacy is not the equivalent of hospital bills, lost employment income, and property damage — the types of liquidated damages compensable under the statute. *Id.* at 222, 719 A.2d at 402. In this case, the Victims' Compensation Program requested reimbursement for sums expended by the program for mental health counseling for Juvenile 1 ($1,645.00). The court granted that request. That award properly reflects the purpose and scope of Vermont's restitution statute. However, mother's request for moving expenses does not reflect "a material loss," 13 V.S.A. § 7043(a)(1)-(2), and is not directly linked to the crime perpetrated against her son.

¶ 20. Rather, relocation in this situation is more akin to "pain and suffering, emotional trauma, loss of earning capacity, and wrongful death awards [which] are not proper subjects of restitution under § 7043, because a restitution order in a criminal case is not the same as, and is no substitute for, an award of civil damages." *Forant*, 168 Vt. at 222, 719 A.2d at 402 (quotation and alteration omitted). While the acts perpetrated against Juvenile 1 may account for his anxiety and depression, and relocation to another town may aid in his recovery, that is not the test. His

counselor testified that a new location would not have as many "triggers" to remind him of the abuse and would be "a fresh start."[3] That she is discussing emotional damages suffered by Juvenile 1 should not be in dispute.

¶ 21. At the restitution hearing, mother testified that while the family had discussed moving to Hawaii before the assault on Juvenile 1, it was a long-term plan that would not have come to fruition at least until her daughter finished high school several years thereafter. The State suggested that, but for defendant's criminal acts, the family would have stayed in South Hero, at least in the short term. However, just as in a tort case in which the defendant's negligent act must be the proximate cause of the plaintiff's injuries, there is a limit to how far the restitution statute can be used to support life changes for a victim. That is what we held in *Forant*.

¶ 22. The family's second reason for relocating — to be close to family and in a state that offers Juvenile 2 the services he needs — is simply irrelevant and is in no way linked to defendant's crime. Though 13 V.S.A. § 5301(4) defines "victim" to include family members of a minor, there was nothing presented to the court that would support a finding that Juvenile 2's relocation was related to the crime against his brother. Accordingly, there are no legal grounds upon which Juvenile 2's needs can be factored into an award of restitution in this case.

¶ 23. Defendant's crime was horrific and Juvenile 1 suffered direct injury. However, the impetus for the relocation to Hawaii is the result, not of the sexual assault, but of the ensuing publicity and the revelation of Juvenile 1's identity. Our restitution statute is not intended to provide "new starts" to restore comfort for the victims. The majority has extended the concept of restitution by finding a weak causal link that I suspect will be ever-expanding. I would hold that the trial court's exercise of discretion in awarding restitution cannot be sustained.

¶ 24. I am authorized to state that Justice Burgess joins this dissent.

---

[3] His counselor did not say he could not begin the healing process without relocating, as reported by the majority. In her letter to the court, admitted through her testimony on the witness stand, she declared: "Although the community, friends and neighbors have been very supportive, I believe it would be difficult for [Juvenile 1] to 'move on' in life."