2015 UT App 138

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
SCOTT C. WADSWORTH,
Defendant and Appellant.

Opinion
No. 20130510-CA
Filed May 29, 2015

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 031908633

Debra M. Nelson and Nisa J. Sisneros, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and JAMES Z. DAVIS concurred.

CHRISTIANSEN, Judge:

¶1     Scott C. Wadsworth appeals from the district court's
restitution order imposed after he was convicted of and
sentenced for sexual exploitation of a minor, unlawful sexual
activity with a minor, and enticing a minor over the internet. The
district court ordered Wadsworth to reimburse the victim for the
lost wages she incurred several years after Wadsworth's crimes
"due primarily to the depression, sleep issues, emotional pain,
and an inability to interact with others that was caused by the
psychological trauma from being victimized by [Wadsworth]."
Wadsworth claims that the causal connection between his
criminal conduct in 2003 and Victim's lost wages in 2009 and

2010 is too attenuated to support an award of restitution and that Victim's lost wages due to depression and psychological trauma are more akin to unrecoverable pain and suffering damages than to pecuniary damages. We conclude that the causal connection between Wadsworth's conduct and Victim's lost wages is clear, that any attenuation resulting from a delay in ordering restitution was caused by Wadsworth absconding before his initial sentencing hearing in 2005, and that Victim's lost wages are economic pecuniary damages specifically recoverable by statute. We therefore affirm the district court's restitution order.

## BACKGROUND

¶2     In July 2003, Wadsworth met Victim, then a minor, in an online chat room. Over the next three weeks, Wadsworth and Victim chatted online and on the telephone. During their conversations, Wadsworth sent Victim numerous pornographic images and video clips. On one occasion, Wadsworth went to Victim's home and she performed oral sex on him. In December 2003, Wadsworth was charged with over twenty offenses arising out of his misconduct involving Victim.

¶3     In October 2004, Wadsworth pled guilty to sexual exploitation of a minor, unlawful sexual activity with a minor, and enticing a minor over the internet. The remaining charges against him were dismissed. The district court set sentencing for April 8, 2005. However, Wadsworth failed to appear at the sentencing hearing, and a warrant was issued for his arrest.

¶4     Wadsworth evaded authorities until July 2009 when he was arrested on the outstanding warrant. Wadsworth was finally sentenced for his crimes in December 2009. At the time of sentencing, the court ordered "that [Wadsworth] pay full and complete restitution" to Victim, and took the amount of restitution under advisement, to be decided at a later date.

¶5     On November 19, 2010, the district court held a restitution hearing. At that hearing, Victim was the only witness to testify. Victim testified that Wadsworth's original criminal conduct and

the reminder of his crime after his 2009 arrest caused her "psychological problems, difficulties and depression" that negatively affected her both personally and professionally. Victim also submitted a written statement signed by her work supervisor, which the court read into the record:

> As a result of the arrest in December [that] has brought up past memories and caused me to go into a deep state of depression, [I] had to cut down my hours at work to deal with past issues and I've missed out [on] 940 hours. I make $13.76 an hour. It is totaled up $12,934.46 and has negatively affected me financially.

Victim's counselor also submitted a letter to the court stating that Victim would likely need weekly counseling sessions for at least one year to deal with issues related to the case. The court took the matter under advisement and continued the restitution hearing until December 2010.

¶6    On December 9, 2010, the court resumed the restitution hearing. At the December restitution hearing, the district court found that Victim's lost wages in 2009 and 2010 were the result of Wadsworth's criminal conduct in 2003. In the district court's written order, the court found that the "re-appearance of [Wadsworth] after that significant amount of time"—between his failure to appear at his 2005 sentencing and his arrest in 2009—"brought back bad memories and caused mental anguish to [Victim]." The district court further found,

> As a direct result of [Wadsworth's] criminal conduct, [Victim] was unable to work full-time as she had been doing before. This was due primarily to the depression, sleep issues, emotional pain, and an inability to interact with others that was caused by the psychological trauma from being victimized by [Wadsworth].

The court ordered Wadsworth to pay restitution in the amount of $6,500 for Victim's counseling costs and $12,934.40 as recompense for Victim's lost wages. Wadsworth now appeals

the restitution order regarding the court's determination on Victim's lost wages.[1]

## ISSUE AND STANDARD OF REVIEW

¶7     "[I]n the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104. "'[T]he exercise of discretion in sentencing necessarily reflects the personal judgment of the court and the appellate court can properly find abuse only if it can be said that no reasonable [person] would take the view adopted by the trial court.'" *State v. Corbitt*, 2003 UT App 417, ¶ 6, 82 P.3d 211 (alterations in original) (quoting *State v. Gerrard*, 584 P.2d 885, 887 (Utah 1978)). Whether an award of restitution is proper in a particular case "depends solely upon interpretation of the governing statute, and the trial court's interpretation of a statute presents a question of law, which [this court] review[s] for correctness." *State v. Brown*, 2009 UT App 285, ¶ 6, 221 P.3d 273 (alterations in original) (citation and internal quotation marks omitted).

## ANALYSIS

¶8     Wadsworth argues that the restitution award to Victim for lost wages was improper for two reasons. First, Wadsworth contends that the causal connection between his conduct in 2003 and Victim's lost wages in 2009 and 2010 is too attenuated to support an award of restitution. Second, Wadsworth claims that Victim's lost wages are more appropriately classified as pain and suffering damages, which are not awardable pursuant to the restitution statute.

---

1. Wadsworth does not challenge the portion of the district court's order of restitution relating to Victim's counseling costs.

I. The Causal Connection Between Wadsworth's Criminal
Conduct and Victim's Lost Wages Is Sufficiently Established to
Support the Award of Restitution.

¶9     The Crime Victims Restitution Act (the Act) provides, "When a defendant is convicted of criminal activity that has resulted in pecuniary damages, in addition to any other sentence it may impose, the court shall order that the defendant make restitution to victims of crime . . . ." Utah Code Ann. § 77-38a-302(1) (LexisNexis 2008). Pecuniary damages are "all demonstrable economic injur[ies] . . . *arising out of the facts or events constituting the defendant's criminal activities.*" *Id.* § 77-38a-102(6) (emphasis added). Criminal activities are defined as "any offense of which the defendant is convicted or any other criminal conduct for which the defendant admits responsibility to the sentencing court with or without an admission of committing the criminal conduct." *Id.* § 77-38a-102(2). Thus, to obtain an order of restitution, the State must prove that the victim has suffered economic injury and that the injury arose out of the defendant's criminal activities. *See id.* § 77-38a-102(6); *see also id.* § 77-38a-102(14)(a) (defining a victim as "any person whom the court determines has suffered pecuniary damages *as a result of* the defendant's criminal activities" (emphasis added)).

¶10     "Utah has adopted a modified 'but for' test to determine whether pecuniary damages actually arise out of criminal activities." *State v. Brown*, 2009 UT App 285, ¶ 11, 221 P.3d 273. Utah's modified "but for" test requires that (1) the damages "would not have occurred but for the conduct underlying the . . . [defendant's] conviction" and (2) the "causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally)." *Id.* (alterations and omissions in original) (citation and internal quotation marks omitted).

¶11     Wadsworth admits that his conduct in 2003, for which he pled guilty, satisfies the statutory definition of criminal activity. However, Wadsworth claims that this criminal conduct and Victim's lost wages are too attenuated because "[s]everal years [had] passed between the conduct at issue and the pecuniary loss." Wadsworth states, "Rather than a direct nexus like a physical injury causing missed work days or a valuable item

missing from a home after a burglary, this case involves a sexual crime's psychological damage and the measure of that damage's resulting negative impact on the victim's ability to perform job duties (six years after the fact)."

¶12    We agree with the district court that Victim's lost wages in 2009 and 2010 were connected closely enough with Wadsworth's criminal acts to be recoverable as restitution. First, while several years did pass between the criminal conduct in 2003 and the beginning of Victim's decreased work hours in 2009, the four-year separation between Wadsworth's scheduled sentencing and the onset of Victim's damages was due *entirely* to Wadsworth absconding before his original sentencing in 2005. Utah law provides that the victim of a crime has "the right to a speedy disposition of the charges free from unwarranted delay caused by or at the behest of the defendant" and to a "prompt and final conclusion of the case after the disposition or conviction and sentence, including prompt and final conclusion of all collateral attacks on dispositions or criminal judgments." Utah Code Ann. § 77-38-7(2) (LexisNexis 2008). Here, Wadsworth should not be rewarded for fleeing and depriving Victim of her right to a quick and prompt resolution of the case. *Cf. State v. Verikokides*, 925 P.2d 1255, 1258 (Utah 1996) (refusing to order a new trial for a defendant whose trial record was destroyed after he fled the country for seven years and observing that "convicted criminals should not be rewarded for fleeing the jurisdiction before sentencing"). Thus, while Victim continued to suffer damage years after the original criminal activity, any lack of temporal proximity between the criminal acts and the ultimate problems faced by Victim arose entirely from Wadsworth's absence from his sentencing, which delayed full resolution of the case for years. The district court did not abuse its discretion by refusing to penalize Victim for the delay caused by Wadsworth.

¶13    Second, the events are not factually attenuated. Complete restitution is that amount necessary to compensate the victim "for all losses caused by [a criminal] defendant." Utah Code Ann. § 77-38a-302(2)(a). The Act "should be liberally construed to accomplish the purpose of making crime victims whole for the

harms they suffer because of a defendant's criminal conduct." *State v. Ruiz*, 2013 UT App 166, ¶ 18, 305 P.3d 223 (Christiansen, J., concurring in part and dissenting in part). District courts are granted flexibility in determining damages in order to "fashion an equitable award to the victim," *see State v. Corbitt,* 2003 UT App 417, ¶ 14, 82 P.3d 211, and the court may consider "all relevant facts" in arriving at an appropriate complete restitution award, *see* Utah Code Ann. § 77-38a-302(5)(b). Wadsworth argues that the causal nexus between his criminal conduct and Victim's pecuniary loss is not "readily apparent." We disagree.

¶14   Here, the district court found a causal nexus between Victim's damages and Wadsworth's criminal conduct. As evidence of the causal connection, Victim testified that beginning in December 2009, she had to decrease her work hours due to depression, sleep issues, and an inability to interact with her coworkers, all arising from Wadsworth's criminal acts. Victim stated that these problems began "[r]ight when [the case] started back up again," near the time that Wadsworth was arrested and sentenced. When asked what she believed has been the cause of her inability to continue full-time work, Victim stated, "It's everything to me of what has happened when I was 14. I had six years to forget about it and then all of the sudden it just comes right back up right in the middle of my life." The district court found that Victim's testimony was credible, and that, but for "being a victim of the crimes that Mr. Wadsworth has pled guilty to," Victim would not have suffered from the psychological issues causing her her inability to work. The district court considered Wadsworth's failure to appear at his sentencing in 2005 and that his reappearance "after that significant amount of time brought back bad memories and caused mental anguish to [Victim]." The court stated that Victim

> suffers from . . . depression or some psychological or mental health issues related to this case that require counseling, that according to her testimony she has suffered from depression that has affected her ability to work and [that she] has not been able to work full-time when prior to that she was able to and that is supported primarily by her testimony.

Based on Victim's testimony and the statements and letters in evidence, the court concluded that "[Victim has] indicated that the depression and therefore her inability to work and how it has affected her work is because of the psychological issues that have arisen because of being a victim of the crimes that Mr. Wadsworth has pled guilty to."

¶15    Victim was the only witness to testify at the hearing and Wadsworth presented no evidence or witnesses at the hearing to rebut Victim's testimony that her depression and inability to work were caused by Wadsworth's criminal activities. On appeal, Wadsworth identifies no record evidence showing that Victim's testimony "was so lacking that no reasonable person would take the view adopted by the trial court."[2] *State v. Hight*, 2008 UT App 118, ¶ 6, 182 P.3d 922 (citation and internal quotation marks omitted). The court appropriately relied on the testimony at the hearing, the exhibits, and the pleadings and arguments of counsel. *See id.* Thus, in light of Victim's testimony, her actual loss, and the deference we must accord the district court and its authority "to fashion an equitable award to the victim," *Corbitt*, 2003 UT App 417, ¶ 14, we hold that the district court did not abuse its discretion or exceed the authority prescribed by law in determining that Wadsworth's criminal

---

2. Wadsworth argues that the State failed to show that Victim's marital problems were not the cause of her depression and consequently her lost wages. But the district court found that Victim's "psychological trauma [caused by Wadsworth's crimes] was manifest by . . . marital intimacy disruption" and that these marital problems were not intervening causes, because Wadsworth's criminal conduct "was the direct cause of the psychological trauma to [Victim]." On appeal, Wadsworth provides no evidence to rebut the district court's determinations and only offers the same speculation presented to the district court that Victim's marital problems could be intervening factors. Thus, Wadsworth has not shown that the district court's findings amounted to an abuse of discretion. *See State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104.

conduct was the "but for" cause of Victim's lost wages, *see State v. Laycock,* 2009 UT 53, ¶ 10, 214 P.3d 104.

## II. Victim's Lost Wages Are Pecuniary Damages Recoverable by Statute.

¶16    Wadsworth argues that even if his criminal conduct caused Victim's damages, her lost wages are more appropriately classified as pain and suffering damages that are not recoverable under the Act. In evaluating this claim, we first examine the plain language of the restitution statute, and we will "apply other methods of statutory interpretation only when the language is either ambiguous or inconsistent." *State v. Mast*, 2001 UT App 402, ¶ 10, 40 P.3d 1143 (citation and internal quotation marks omitted). "When examining a statute's plain language, we strive to give meaning to each section of the statute in order to give effect to all of the statute's terms." *Id.* (citation and internal quotation marks omitted).

¶17    The Act explicitly provides for victims to receive restitution for lost wages. The Act defines pecuniary damages as "*all demonstrable economic injury*, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities" and encompasses "losses including lost earnings." Utah Code Ann. § 77-38a-102(6) (LexisNexis 2008) (emphasis added). The Act specifically excludes "punitive or exemplary damages and pain and suffering." *Id.*

¶18    Wadsworth argues that although "[Victim] identified a precise monetary amount she lost," her lost wages result from her cutting back her hours "because of her emotional issues and her own determination of how much she could or could not work." Wadsworth asserts that Victim's claim for lost wages is therefore "a proxy for pain and suffering." But the Act only requires that a victim's damages "aris[e] out of the facts or events constituting the defendant's criminal activities." *Id.* And "[i]f readily ascertainable costs associated with emotional injury arising directly from a crime were not within the scope of restitution," then "restitution would not cover reasonable counseling expenses for victims of crime." *State v. Shepherd*, 2012

VT 91, ¶ 11, 60 A.3d 213; *see also* Utah Code Ann. § 77-38a-302(5)(b)(ii) (LexisNexis 2008) (explaining that a court's restitution determination should take into consideration the "cost of necessary medical and related professional services . . . relating to physical or mental health care, including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment").

¶19    "The focus in awarding restitution to a victim is not the type of injury sustained, but rather the link between the damages and the crime." *Shepherd*, 2012 VT 91, ¶ 11. In *Shepherd*, the Vermont Supreme Court addressed the issue of an award of restitution for a sexual-assault victim's relocation expenses. *Id.* ¶ 1. The court stated that the victim's "emotional injury and ostracization . . . were the natural and probable consequences of the sexual assaults, thereby necessitating relocation." *Id.* ¶ 9. Though the victim suffered emotional injury, the court held that his relocation expenses had a specific monetary value, were based on "the disruption of the family's life, not some subjective emotional harm," and were appropriately recoverable as restitution because there was a direct link between the crime and the costs incurred. *Id.* ¶ 12. Here, Victim's lost-wages claim was based on the total number of hours she could not work because of the psychological trauma directly caused by Wadsworth's criminal acts and reignited by his arrest in 2009.

¶20    Wadsworth also argues that the Act typically provides for lost wages in two instances: (1) when the victim incurs lost wages because the offense caused bodily injury to the victim, and (2) when the victim's tools or equipment items of her trade are damaged or stolen and those items are essential to the victim's current employment. This argument appears to interpret the Act as limiting lost-wages restitution to those types of cases. But such an interpretation is inconsistent with the plain language of the Act. "In determining the monetary sum and other conditions for complete restitution, the court shall consider all relevant facts, *including*," among other things, those categories of lost wages Wadsworth has identified. *See* Utah Code Ann. § 77-38a-302(5)(b) (emphasis added). "[W]hen any statute uses the word 'includ[ing],' it 'means that the items listed

are not an exclusive list, unless the word "only" or similar language is used to expressly indicate that the list is an exclusive list.'" *Mallory v. Brigham Young Univ.*, 2014 UT 27, ¶ 14, 332 P.3d 922 (quoting Utah Code Ann. § 68-3-12(1)(f) (LexisNexis 2014)); *see also Boyle v. Christensen*, 2011 UT 20, ¶ 27, 251 P.3d 810 ("When 'including' precedes a list, its common usage is to indicate a partial list.").

¶21    The Act contains no express language limiting the list of relevant facts a court must consider when awarding restitution. In fact, we note that Utah Code section 77-38a-302(5)(b) instructs courts to consider "all relevant facts," indicating that a court must consider all facts that are relevant to the case, including ones beyond those listed in that section. Moreover, applying the statutory meaning of "including" to section 77-38a-302(5)(b) yields results consistent with the Act's purpose "of making crime victims whole for the harms they suffer because of a defendant's criminal conduct." *State v. Ruiz*, 2013 UT App 166, ¶ 18, 305 P.3d 223 (Christiansen, J., concurring in part and dissenting in part). Thus, a plain reading of the restitution statute supports the district court's conclusion that Victim suffered "pecuniary damages" in the form of lost wages as contemplated by the Act. The district court therefore correctly determined that Victim's damages included her lost wages and that such damages were appropriately awardable pursuant to the Act.

CONCLUSION

¶22    We conclude that the district court did not abuse its discretion or exceed its authority in determining that Victim's pecuniary damages were caused by Wadsworth's criminal activities for purposes of the restitution statute. Nor did the district court abuse its discretion or exceed its authority in determining that Victim's damages included her lost wages. We affirm the district court's restitution order.

———————