*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2013-309

JULY TERM, 2014

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Spencer Durham | } | DOCKET NO. 1058-10-12 Bncr |

Trial Judge: Cortland T. Corsones

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction, following a jury trial, of two counts of identity theft, one count of attempting to utter a false instrument, and one count of possession of stolen property. He argues that the court committed plain error in failing to sua sponte declare a mistrial. He also asserts that the court erred in denying his motion for judgment of acquittal. We affirm.

Defendant was charged with the crimes above in October 2012. Defendant was assigned three different lawyers before ultimately representing himself at trial in February 2013. The State presented the following evidence at trial. A police officer with the Bennington Police Department stopped defendant for driving a motorcycle without a visible license plate. Defendant gave the officer a false name and date of birth. During a consented-to search, the officer discovered in defendant's jacket a checkbook belonging to Peter and Lynn Blandy and two loose checks. One of the checks was written out to defendant for $450. Defendant told the officer that the Blandys were his friends and that they had given him their checkbook. Defendant was taken into custody. While in custody, he admitted lying to the officer about his name.

Mrs. Blandy testified that she had ordered checks from the bank but never received them. One of her missing checks had been cashed using a forged signature. Another check was found in defendant's possession with a forged signature. The Blandys did not know defendant and neither of them gave defendant permission to use their bank account information.

The State also presented testimony from Maria and Lance Legrys. The State had provided notice to defendant prior to trial that it intended to offer evidence related to "[a]ll allegations in the affidavit of probable cause." The affidavit included allegations that defendant had cashed numerous checks using the Legrys' banking information and that he had purchased his motorcycle using their banking information as well. Defendant moved to exclude evidence referring to the motorcycle or other purchases made with fraudulent checks, including those checks listed in the probable cause affidavit. The court denied the motion. Its decision focused on evidence that, two days before the charged crimes, defendant purchased a motorcycle using a

forged check that contained the Legrys' stolen bank account information. The court found that the evidence demonstrated defendant's intent, plan and knowledge regarding his current charges and its probative value outweighed the danger of any unfair prejudice to defendant. See V.R.E. 404(b).

Mrs. Legrys testified at trial that a forged check had been written out to defendant using her bank account information. Both of the Legrys stated that defendant did not have permission to use their bank account information. A check from the Legrys' account, which contained the Legrys' routing and checking account numbers, was admitted into evidence. The State also presented evidence that defendant had used a check containing the Legrys' bank account information to purchase a motorcycle and other items. This check was admitted into evidence.

Finally, the State called Scott Dunlap, a detective with the Vermont State Police. He testified that he began an investigation in August 2012 into fraudulent check cashing involving the Legrys' bank information. One of the checks had been written out to defendant and signed by defendant. The detective learned that numerous checks were being cashed using the Legrys' information. The checks were used to buy prepaid Visa cards at various Price Chopper supermarkets. The detective explained that he was subsequently contacted by the Bennington police officer who had stopped defendant for a traffic violation. His specific testimony on this point follows:

> Q. Detective, did there come a time when you were contacted or somehow came into contact with Officer Faden of the Bennington Police Department in September?
>
> A. Yes, we knew [defendant] was involved in this check cashing. I was contacted by Trooper Robison. He advised me that Officer Faden had stopped [defendant] on the motorcycle here in Bennington. I then contacted Officer Faden to confirm that information. He told me he did have him stopped, and he was transporting him to the Bennington Police Department.

The detective then described speaking with defendant at the police station. He asked defendant about the motorcycle he had been driving as the detective had learned that defendant had recently purchased it. "And with his history," the detective continued, the detective contacted someone at the motorcycle shop to see how defendant had paid for his purchase. He learned that defendant had paid for the motorcycle with a check using the Legrys' bank account information. The detective also testified that he spoke with the Blandys and he identified the book of checks, belonging to the Blandys, found in defendant's possession.

At the close of the State's case, defendant moved for judgment of acquittal. The court denied the motion. Defendant did not testify or call any witnesses. The jury found defendant guilty of the charged crimes. Defendant renewed his motion for judgment of acquittal, which the court denied in a written order. This appeal followed.

Defendant first argues that the trial court committed plain error by failing to sua sponte declare a mistrial. He bases this argument on the testimony of Detective Dunlap, cited above. He points to the detective's statement that "we knew [defendant] was involved in this check cashing," and his testimony that "with his history," the detective wanted to determine how defendant had purchased his motorcycle. According to defendant, the detective's testimony

2

"went beyond the bounds set by the court in its pre-trial rulings on prior bad acts evidence." He maintains that the detective's statements were "so prejudicial" that they denied him a fair trial.

We find no plain error here. As defendant recognizes, "[p]lain error exists only in extraordinary situations where it is obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Forant, 168 Vt. 217, 220 (1998) (quotation omitted). The detective did not exceed the bounds of the court's ruling. The court ruled before trial that the State could present evidence concerning defendant's use of stolen bank information from the Legrys, including his purchase of a motorcycle with a fraudulent check. Consistent with this ruling, the detective described his investigation into defendant's use of the Legrys' bank account information. His reference to defendant's involvement "in this check cashing" referred to his investigation, which he had just finished describing. The detective's statement about defendant's "history" similarly refers to this investigation. We note, moreover, that defendant's use of the Legrys' banking information had already been testified to by the Legrys, and by an employee of the motorcycle store where defendant purchased his motorcycle. We find defendant's first claim of error to be without merit.

Defendant next asserts that the court erred in denying his motion for judgment of acquittal as to the charges of identity theft and attempting to utter a forged instrument. As to the identity theft charge, the State alleged that defendant possessed the Blandys' personal information with intent to commit false pretenses by intentionally cashing their check and by knowingly using a forged signature. See 13 V.S.A. § 2030(a) (identifying elements of identity theft). To be convicted of uttering a forged instrument, the State needed to prove that defendant "utter[ed] and publish[ed] as true a forged, altered or counterfeited record, deed, instrument or other writing . . . , knowing the same to be false, altered, forged or counterfeited, with intent to injure or defraud a person" Id. § 1802. Defendant argues that there was insufficient evidence to show that he knew that the checks in his possession were forged. According to defendant, the mere possession of a forged check does not show that he knew it was forged.

On review, we consider "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Delisle, 162 Vt. 293, 307 (1994) (quotation and brackets omitted). Unlike the cases cited by defendant, we find ample evidence to support defendant's convictions here. Cf. State v. Ravenna, 151 Vt. 96, 98-100 (1988) (finding insufficient evidence that defendant knew check was forged where State's evidence showed only that defendant worked with person who was purported endorser of check and knew check was missing); State v. Colby, 139 Vt. 475, 479 (1981) (reversing defendant's conviction for uttering a forged instrument by cashing welfare check made out to, and bearing, signature of defendant's close friend, because State failed to provide any evidence as to whether defendant knew instrument was forged, such as testimony from holder of check that defendant knew his handwriting). In each of those cases, in contrast to this one, the check at issue was made out to and signed by the purported endorser (as opposed to the defendant), and the defendant personally knew the purported endorser. Defendants could plausibly argue in those cases that they had come into possession of the already-endorsed checks not aware that the endorsements were forged. In this case, the check bearing the forged signature was made out to defendant, and the evidence was that defendant did not know or transact any business with the check-writer.

As the trial court explained in denying defendant's motion for judgment of acquittal, the State's evidence in this case fairly demonstrated the following. When defendant was stopped by police, he provided a false name. A stolen checkbook and two loose checks were discovered in defendant's coat pocket. The checkbook and the checks belonged to the Blandys. One of the loose checks had been made out payable to defendant for $450. The check was purportedly signed by Peter Blandy. Defendant also had in his coat pocket the address for a branch of the Blandys' bank in Bennington. Defendant told police that the Blandys were friends of his and that they had given him their checks. Defendant was nervous and fidgety during this interaction. The Blandys testified that the checks were stolen from their mailbox. They did not know defendant and were not friends with him. The signature on the check made payable to defendant was a forgery. Another one of their forged checks had been recently cashed by defendant at the Fair Haven branch of the Blandys' bank. The forged check in defendant's possession at the time of the stop was dated one day later than the forged check cashed in Fair Haven, and was sequentially (by check number) the Blandys' next check. The checks in defendant's possession contained the Blandys' names, address, and bank account number. Further police investigation revealed that defendant had recently purchased the motorcycle that he was riding at the time of the stop with a stolen check from another victim. The State was not required to produce evidence that defendant knew the Blandys' handwriting or would recognize that Peter Blandy's signature had been forged on the check in his pocket, as defendant suggests. The evidence presented at trial here is sufficient to show that defendant knowingly used a forged signature and uttered as true a forged instrument knowing it to be false.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Geoffrey W. Crawford, Associate Justice

4