**2013 UT App 166**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JONATHAN A. RUIZ,
Defendant and Appellant.

Opinion
No. 20110796-CA
Filed July 5, 2013

Fourth District, Provo Department
The Honorable Samuel D. McVey
No. 101402012

Neil D. Skousen, Attorney for Appellant
John E. Swallow, Erin Riley, and Bret J. Delporto,
Attorneys for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion in which JUDGE
CAROLYN B. MCHUGH concurred, with opinion. JUDGE MICHELE
M. CHRISTIANSEN concurred in part and dissented in part, with
opinion.

DAVIS, Judge:

¶1      Jonathan A. Ruiz appeals the trial court's order that he pay
$51,995 in restitution in connection with his convictions for
attempted unlawful sexual activity with a minor. We reverse and
remand.

BACKGROUND

¶2    On June 22, 2010, twenty-one-year-old Ruiz twice had sexual intercourse with the fifteen-year-old victim (Victim) at her home. Victim's younger sister (Sister) witnessed this event. Immediately following the incident, Victim became unusually upset and expressed suicidal thoughts. Concerned that Victim might hurt herself, Victim's parents enrolled her in La Europa, a residential treatment facility, approximately a week after the incident.

¶3    Ruiz's abuse of Victim was apparently only "the culminating factor . . . bringing [her] to treatment." Prior to the incident with Ruiz, Victim had "a history of depression, anxiety, self-harm, substance abuse, lying, arguing, stealing, and sexually acting out." She had also attempted suicide on three previous occasions. In fact, when Victim was initially admitted to La Europa, her trauma from the incident with Ruiz was identified as only one of five major areas of concern to be addressed in therapy, which also included depression, hypersexuality, family issues, and substance abuse. Victim's family problems comprised an extensive portion of her treatment at La Europa, which included almost weekly sessions of family therapy to help Victim and her parents work through the issues in their relationships. Although a number of preexisting conditions were addressed during Victim's stay at La Europa, the therapist who performed the initial interview of Victim when she was admitted surmised that it would "take [Victim] longer to engage in the therapeutic process" due to the trauma she had suffered following the incident with Ruiz.[1] Victim was on twenty-four-hour suicide watch for the first month of her stay at La Europa, in direct response to Victim's parents' concern that she had become severely suicidal following the abuse. By the time Victim

---

1. Although Victim's father asserted at the restitution hearing that Victim was too traumatized to even address the incident with Ruiz until four months into her inpatient therapy, it is clear from the notes from La Europa that she began to discuss the event in therapy, at least to some extent, immediately after being admitted.

left La Europa, she was still struggling to process the incident with Ruiz and had experienced nightmares, hallucinations, and panic attacks relating to the incident.

¶4     After spending $51,000 on Victim's treatment at La Europa over the course of nine months, Victim's parents removed her from the program because they could no longer afford it. They then enrolled Victim in outpatient counseling for a short period of time but again removed her because of the cost. Sister was also briefly enrolled in outpatient counseling due to the trauma she suffered after witnessing the incident. The total cost of both girls' outpatient counseling was $995.

¶5     Ruiz pleaded guilty to two counts of attempted unlawful sexual activity with a minor and was sentenced to two years in jail with one year and 155 days suspended. The trial court then held a restitution hearing to receive evidence relating to the cost of Victim's therapy and Ruiz's ability to pay. *See generally* Utah Code Ann. § 77-38a-302(5)(b)(ii) (LexisNexis 2012) (directing trial courts to consider "the cost of necessary . . . professional services and devices relating to . . . mental health care" as one form of pecuniary loss relevant to a determination of complete restitution). The court determined that the cost of Victim's therapy was reasonable and appropriate. Although the court recognized that Victim "may have benefitted from the treatment for the preexisting conditions," it determined that the therapy was ultimately necessitated by the suicidal thoughts Victim began to have as a result of Ruiz's actions. The court also determined that Ruiz had a limited ability to pay the entire amount of restitution but that he was capable of paying it in installments over the course of his working life. It further recognized the rehabilitative and deterrent effects the restitution would have. Accordingly, the court ordered that Ruiz pay complete restitution in the amount of $51,995, to be paid in installments "set by his probation officer in conjunction with taking into account all of his other financial obligations." Ruiz appeals.

ISSUE AND STANDARD OF REVIEW

¶6     Ruiz argues that the trial court's restitution award was excessive and did not appropriately weigh the factors relating to his ability to pay. "In the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104.

ANALYSIS

¶7     Ruiz contests both the trial court's calculation of complete restitution and the propriety of its ultimate imposition of court-ordered restitution. "In determining restitution, the court shall determine complete restitution and court-ordered restitution." Utah Code Ann. § 77-38a-302(2); *see also Laycock*, 2009 UT 53, ¶ 20. Complete restitution is the amount of "restitution necessary to compensate a victim for all losses caused by the defendant." Utah Code Ann. § 77-38a-302(2)(a). Court-ordered restitution, on the other hand, is "the restitution the court having criminal jurisdiction orders the defendant to pay." *Id.* § 77-38a-302(2)(b).

¶8     Ruiz first asserts that the trial court erred in its calculation of complete restitution because it did not appropriately consider the impact of Victim's preexisting conditions on her need for inpatient therapy in determining the loss attributable to Ruiz. In determining the amount of complete restitution, Utah courts employ "[a] modified 'but for' test," which "requires (1) that the damages would not have occurred but for the conduct underlying the [defendant's] . . . conviction and (2) that the causal nexus between the [criminal] conduct and the loss . . . not [be] too attenuated (either factually or temporally)." *State v. Harvell*, 2009 UT App 271, ¶ 12, 220 P.3d 174 (alterations and omissions in original) (citations and internal quotation marks omitted).

¶9     Accordingly, a defendant may be ordered to pay restitution only for pecuniary loss resulting from a crime he either was

convicted of or admitted responsibility for. *See* Utah Code Ann. § 77-38a-302(1); *State v. Mast*, 2001 UT App 402, ¶ 16, 40 P.3d 1143. For example, in *State v. Harvell*, 2009 UT App 271, 220 P.3d 174, a defendant pleaded guilty to attempted burglary and attempted theft by receiving stolen property—a vehicle. *Id.* ¶ 6. While on vacation, the victim had left the vehicle with a friend, from whose house it was stolen. *Id.* ¶ 2. When she recovered the vehicle, the victim discovered that an iPod she had left in the vehicle was broken; approximately one week later, she began to notice a problem with the brake system. *Id.* ¶ 5. The trial court ordered the defendant to pay for the cost of replacing the damaged brake system and broken iPod. *Id.* ¶ 6. We reversed the trial court's restitution order because "there [was] nothing in the record to support the conclusion that the failure of the brake system was caused by [the defendant's] brief episode of reckless driving" and "the State failed to make a causal connection between the broken iPod and [the defendant's] attempted theft by receipt of the stolen vehicle" in light of the fact that "at least two other persons . . . had access to the vehicle and the iPod." *Id.* ¶¶ 13–14.

¶10 Similarly, in *State v. Mast*, 2001 UT App 402, 40 P.3d 1143, we reversed a trial court's order that a defendant pay restitution for all property stolen in a burglary when she admitted only to receiving certain items of property stolen by the burglar and denied having any involvement in the burglary. *Id.* ¶¶ 3–5, 16–19. We explained that the restitution "statute requires that responsibility for the criminal conduct be firmly established, much like a guilty plea, before the court can order restitution," and that the trial court could therefore order the defendant to pay restitution only for the stolen property she admitted to receiving. *Id.* ¶ 18 (citation and internal quotation marks omitted).

¶11 Although the trial court in this case recognized that Victim had a number of preexisting conditions and that the inpatient therapy provided by La Europa likely addressed those conditions, it nevertheless determined that complete restitution—the amount relating to losses caused by Ruiz—included the entire cost of the therapy provided to Victim during the year following the incident.

Although the trial court determined that Ruiz's actions were the "but for" cause of Victim's enrollment in La Europa, triggering the "severe suicidal ideations [she] expressed" as a consequence of the incident, it failed to explain the causal nexus between the incident and the nine months of intensive inpatient therapy Victim underwent and failed to examine how Victim's preexisting conditions impacted her need for that level of therapy.[2] Thus, the trial court's findings in support of its determination of complete restitution were insufficient, and we must remand for the trial court to make more detailed findings in support of its determination of complete restitution, taking into account the extent to which the therapy at La Europa was necessitated by preexisting conditions that were neither caused nor exacerbated by Ruiz's actions and thus were too temporally or factually attenuated to have been the result of Ruiz's criminal conduct.[3] *See Harvell*, 2009

---

2. We are particularly concerned with the trial court's determination that the entire portion of therapy relating to Victim's preexisting family issues and substance abuse problems should be included in the complete restitution calculation. It is difficult to see how Ruiz's actions could have more than minimally impacted Victim's need for therapy on those issues. The fact that Ruiz's actions may have necessitated Victim's residential treatment does not mean that there is a causal nexus between his actions and all the treatment she actually received.

3. The record contains extensive evidence regarding the details of Victim's therapy, from which the trial court could make a reasonable determination of what portion of the therapy was causally connected to Ruiz's actions. However, even if it were impossible to make such a determination, the trial court should have considered whether the apparent existence of contributing factors, i.e., the preexisting conditions, might constitute "other circumstances which . . . may make [court-ordered] restitution inappropriate," Utah Code Ann. § 77-38a-302(5)(c)(iv) (LexisNexis 2012). *See State v. Robinson*, 860 P.2d 979, 983 (Utah Ct. App. 1993) ("Restitution should be ordered only in cases where liability is clear

(continued...)

UT App 271, ¶ 12. *See generally* Utah Code Ann. § 77-38a-302(3) (LexisNexis 2012) ("If the court determines that restitution is appropriate or inappropriate . . . , the court shall make the reasons for the decision part of the court record.").

¶12   Ruiz next contends that the trial court did not adequately consider the factors outlined in Utah Code section 77-38a-302(5)(c)(i)–(iv) relating to his ability to pay restitution and that it therefore exceeded its discretion by declining to impose court-ordered restitution in an amount less than complete restitution. The amount of court-ordered restitution need not be equal to the amount of complete restitution, and its determination is highly discretionary. *See State v. Laycock*, 2009 UT 53, ¶ 28, 214 P.3d 104. Nevertheless, in determining the amount of court-ordered restitution, the trial judge must consider

> (i) the financial resources of the defendant and the burden that payment of restitution will impose, with regard to the other obligations of the defendant;
> (ii) the ability of the defendant to pay restitution on an installment basis or on other conditions to be fixed by the court;
> (iii) the rehabilitative effect on the defendant of the payment of restitution and the method of payment; and
> (iv) other circumstances which the court determines may make restitution inappropriate.

Utah Code Ann. § 77-38a-302(5)(c)(i)–(iv).

¶13   Here, while the amount of complete restitution may or may not have been appropriate, it appears that the trial court adequately considered the necessary factors with respect to court-ordered

---

3. (...continued)
as a matter of law and where commission of the crime clearly establishes causality of the injury or damages.").

restitution. Specifically, the court determined that although Ruiz was not in a position to pay the money immediately, he was young and able to work and could therefore pay off the restitution in installments over the course of his working life. The court also found that restitution would have a rehabilitative effect for Ruiz. Furthermore, the court allowed for the amount of the installments to be determined by Ruiz's probation officer, taking into account all of his other obligations. Though it does seem rather harsh (depending on the amount of restitution ordered on remand) to expect Ruiz to continue paying restitution throughout his entire working life, we cannot say that such an order was beyond the court's discretion, given that the court clearly considered the statutory factors. *See generally Laycock*, 2009 UT 53, ¶ 23 n.2 ("[Section 77-38a-302(3)] unambiguously cedes to trial courts the discretion to either award or to decline to make an award so long as the court explains its reasoning on the record.").

CONCLUSION

¶14    Although we conclude that the trial court did not abuse its discretion in applying the statutory factors relating to court-ordered restitution, we determine that its calculation of complete restitution was not adequately explained and did not appropriately take into account other factors contributing to Victim's need for therapy. We therefore reverse and remand for the trial court to reconsider its determination of complete restitution and, if appropriate, to make corresponding adjustments to its determination of court-ordered restitution.

———————

McHUGH, Judge (concurring):

¶15    I agree with the lead opinion that the restitution award should be set aside and the matter remanded for further consideration. However, in my view, the question on remand is simply whether the counseling fees for preexisting conditions, such as Victim's substance abuse, are too factually or temporally

attenuated to meet Utah's modified "but for" test for determining complete restitution.

¶16    "A modified 'but for' test requires that (1) the damages 'would not have occurred but for the conduct underlying the . . . [defendant's] conviction' and (2) the 'causal nexus between the [criminal] conduct and the loss . . . is not too attenuated (either factually or temporally).'" *State v. Brown*, 2009 UT App 285, ¶ 11, 221 P.3d 273 (alterations and omissions in original) (quoting *State v. McBride*, 940 P.2d 539, 544 n.5 (Utah Ct. App. 1997)). In *Brown*, the defendant entered his girlfriend's home and assaulted his girlfriend's mother. *Id.* ¶ 2. As part of the total restitution award imposed, the trial court included the expenses the girlfriend incurred in relocating to her own apartment seven or eight months after the incident. *Id.* ¶¶ 4, 11. On appeal, we reversed because the State had failed to prove a causal connection between the relocation expenses and the crime. *Id.* ¶¶ 11–13.

¶17    I agree with the lead opinion that a similar conclusion may be appropriate here with respect to some of the counseling expenses. I view as well supported the trial court's finding that the commitment of Victim to a residential facility was necessary due to the real concerns that she might harm herself, and that the triggering event for her suicidal intent was Ruiz's sexual assault. Once in the residential facility, however, the treatment and counseling addressed mental health issues that Victim had suffered from long before the assault. While some or all of that counseling may meet Utah's modified "but for" test, I would remand for the trial court to examine the various categories of treatment to determine if they are too factually or temporally attenuated to do so.

———

CHRISTIANSEN, Judge (concurring in part and dissenting in part):

¶18    I concur in the lead opinion's conclusion that the trial court did not abuse its discretion in determining the amount of court-ordered restitution that Ruiz must pay. I disagree, however, with

the lead opinion's determination that in calculating complete restitution, the trial court failed to sufficiently examine how Victim's preexisting conditions impacted her need for nine months of intensive inpatient treatment. In my view, the Crime Victims Restitution Act (the Act) should be liberally construed to accomplish the purpose of making crime victims whole for the harms they suffer because of a defendant's criminal conduct. *See* Utah Code Ann. §§ 77-38a-101 to -601 (LexisNexis 2012). The current version of the Act defines pecuniary damages as "all demonstrable economic injury, whether or not yet incurred, which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities." *Id.* § 77-38a-102(6) (2012). While the lead decision correctly points out that complete restitution is that amount necessary "to compensate a victim for all losses caused by [a criminal] defendant," I believe the trial court correctly determined that complete restitution in this case amounted to the entire cost of the therapy provided to Victim. *See id.* § 77-38a-302(2)(a).

¶19    In my view, the record supports the trial court's determination that Ruiz's criminal actions were the cause of Victim's need to participate in inpatient treatment and that Ruiz should pay for the entire amount of that treatment. Victim's treatment records demonstrate that her need for professional mental health treatment in an inpatient setting was necessitated by Ruiz's illegal actions. In other words, the need for and expense incurred in seeking inpatient treatment for Victim would not have been required at that time but for Ruiz's sexual assault on her. Victim's treatment records also demonstrate that it took her longer to engage in the therapeutic process due to the trauma she suffered following the incident with Ruiz. And "[b]y the time Victim left La Europa, she was still struggling to process the incident with Ruiz." *See supra* ¶ 3. That Victim may have had preexisting mental health issues or a more vulnerable psyche at the time of Ruiz's assault should not bar Victim and her family from being fully compensated for all of the pecuniary damages they incurred because of Ruiz's criminal behavior. In this context, the treatment Victim received for any preexisting mental health conditions and

the treatment Victim received to aid in her recovery from Ruiz's criminal conduct seem to be interrelated.

¶20    In *State v. Behnke*, 553 N.W.2d 265 (Wis. Ct. App. 1996), the Wisconsin Court of Appeals grappled with a similar restitution issue. *Id.* at 272–73. There, the defendant was convicted of false imprisonment, battery, and sexual assault. *Id.* at 268. On appeal, he argued that the restitution amount he was ordered to pay should be reduced because at least some of the victim's mental health expenses were for a preexisting condition stemming from prior abuse she suffered before the defendant's assault. *Id.* at 272. The court acknowledged that it was the victim's burden to prove that the defendant's actions caused her injuries, but found that the victim successfully did so and ordered restitution in the full amount of the victim's therapy costs. *Id.* at 273. "[The victim] proved that [the defendant] attacked her and that as a result of her attack, her mental health regressed and she had to return to a mental health setting." *Id*. The court noted "that if the defendant's actions were the precipitating cause of the injury complained of, and such injury was the natural consequence of the actions, the defendant is liable, although the victim's preexisting condition might have aggravated the injury." *Id*.

¶21    Here, the evidence submitted at the restitution hearing similarly revealed that Victim had preexisting mental health conditions that may have left her more vulnerable to Ruiz and which may have contributed to her emotional distress following his criminal act. Based upon the record, in my opinion, the trial court correctly found a sufficient causal nexus between Ruiz's criminal conduct and all of Victim's pecuniary damages. Thus, I would affirm the trial court's complete restitution award.

---