2016 UT App 18

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JONATHAN A. RUIZ,
Appellant.

Opinion
No. 20140159-CA
Filed January 28, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 101402012

Neil D. Skousen, Attorney for Appellant

Sean D. Reyes and Mark C. Field, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which JUSTICE JOHN A. PEARCE concurred. JUDGE MICHELE M. CHRISTIANSEN concurred in part and dissented in part, with opinion.[1]

BENCH, Senior Judge:

¶1    Jonathan A. Ruiz appeals the trial court's order that he pay restitution in the amount of $42,475 in connection with his

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6). Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

convictions for attempted unlawful sexual activity with a minor and its order denying his motion to disqualify the trial judge. We affirm both orders.

BACKGROUND

¶2     We previously considered this matter in *State v. Ruiz* (*Ruiz I*), 2013 UT App 166, 305 P.3d 223. The victim in this case (Victim) was admitted to La Europa, a residential treatment facility, because she expressed suicidal thoughts following her sexual encounters with Ruiz. *See id.* ¶ 2. But even before she met Ruiz, Victim "had a history of depression, anxiety, self-harm, substance abuse, lying, arguing, stealing, and sexually acting out." *Id.* ¶ 3 (internal quotation marks omitted). Thus, her therapy at La Europa addressed a number of issues, including "trauma from the incident with Ruiz," "depression, hypersexuality, family issues, and substance abuse." *Id.* Victim remained at La Europa for nine months at a cost of $51,000. *Id.* ¶ 4.

¶3     The trial court determined that complete restitution included the entire cost of Victim's stay at La Europa because "Ruiz's actions were the 'but for' cause of Victim's enrollment in La Europa." *Id.* ¶ 11. However, when this decision was appealed in *Ruiz I*, we concluded that the trial court had "failed to explain the causal nexus between the incident and the nine months of intensive inpatient therapy Victim underwent," which included family therapy and substance abuse treatment, or "to examine how Victim's preexisting conditions impacted her need for that level of therapy." *Id.* ¶ 11 & n.2. Thus, we held that "the trial court's findings in support of its determination of complete restitution were insufficient" and remanded the case so the trial court could "make more detailed findings in support of its determination of complete restitution." *Id.* ¶ 11.

¶4     On remand, the trial court made more detailed findings regarding the impact of Ruiz's actions on Victim. The trial court found that prior to the incident with Ruiz, Victim "had been undergoing outpatient counseling" and was "experiencing improvement in her condition before the crime without inpatient treatment." Following the encounter, Victim "regressed to being passively suicidal," which "aggravated [her] preexisting mental conditions . . . to the point outpatient care was inadequate."

¶5     The trial court also found that the monthly tuition paid to La Europa was fixed, regardless of the issues addressed. Thus, although "the victim received treatment in La Europa to replace the outpatient treatment previously received for her preexisting conditions . . . , she was not charged extra for that treatment," because she "would have paid the same monthly tuition if her only issue was recovery from the trauma suffered at the hands of [Ruiz]." The trial court found that the entire nine months of residential treatment was necessary to address the trauma Victim suffered and that even at the time of discharge, continued inpatient therapy was recommended specifically with respect to Victim's "continuing trauma issues from the crime." Nevertheless, the trial court deducted the estimated per-hour cost (based on the per-hour rate Victim was later charged for outpatient therapy) of a number of Victim's therapy sessions at La Europa that the trial court determined were devoted exclusively to unrelated preexisting conditions and reduced the total amount of complete restitution to $42,475.

¶6     After the trial court issued its order, Ruiz filed a motion under rule 29 of the Utah Rules of Criminal Procedure to disqualify the trial judge. Ruiz asserted that the judge "showed bias against [Ruiz] by inappropriately denying defense counsel the right to cross-examine the victim." He also asserted that by suggesting that counsel's cross-examination of Victim would "traumatize" her, the judge "personally attack[ed] defense counsel's integrity as an officer of the court." Furthermore, Ruiz

argued that the judge indicated his bias against Ruiz by characterizing Ruiz's actions toward Victim as "rape"; by generally minimizing the impact of Victim's preexisting conditions, in particular the impact of alleged physical and emotional abuse committed by her father; by expressing his agreement with the dissenting opinion rather than the lead opinion in *Ruiz I*; and by indicating his intent to order the maximum amount of restitution possible.

¶7 The trial judge made a threshold determination not to grant Ruiz's motion and referred the motion to the presiding judge. In the referral order, the trial judge explained the reasons he believed the motion to disqualify should be denied.

¶8 The presiding judge concluded that the trial judge's refusal to allow Ruiz's counsel to cross-examine Victim showed only "a disagreement regarding the extent of the victim's duties to provide evidence at the hearing" and failed to demonstrate "either actual or apparent bias or prejudice against [Ruiz]." The presiding judge further found that statements the trial judge made to Ruiz's counsel did not attack counsel's integrity and, at best, "only commented on the unintended effects of counsel's examination of the victim." The presiding judge explained that the trial judge's use of the term "rape" was clearly "used only to reference the victim's therapists' use of the term" and did not indicate the trial judge's belief that Ruiz was guilty of rape rather than the crime he was actually convicted of—attempted unlawful sexual activity with a minor. The presiding judge also concluded that the trial judge's discussion of Victim's preexisting conditions revealed only "a disagreement with counsel regarding the cause of the victim's need for therapy," not any "actual or apparent bias against [Ruiz]." Finally, the presiding judge rejected Ruiz's assertion that the trial judge "begrudged having to follow the directions received from the court of appeals on remand," observing that the trial judge "clearly stated [his] intention to exercise [his] responsibilities

'within the bounds of what the appellate courts'" had directed. Accordingly, the presiding judge denied Ruiz's motion to disqualify the trial judge.

ISSUES AND STANDARDS OF REVIEW

¶9   Ruiz first argues that the trial court exceeded its discretion in fixing the amount of restitution. "[I]n the case of restitution, a reviewing court will not disturb a district court's determination unless the court exceeds the authority prescribed by law or abuses its discretion." *State v. Laycock*, 2009 UT 53, ¶ 10, 214 P.3d 104.

¶10   Ruiz further argues that the trial judge erred in failing to recuse himself and by commenting on Ruiz's motion to disqualify when referring the motion to the presiding judge. "Issues of recusal present questions of law that we review for correctness." *State v. Wareham*, 2006 UT App 327, ¶ 13, 143 P.3d 302.

ANALYSIS

I. Restitution Order

¶11   Ruiz first asserts that the trial court exceeded its discretion by ordering that he pay complete restitution in the amount of $42,475.[2] In doing so, he argues that the trial court

---

2. Ruiz refers to a number of perceived errors in the course of his argument, most of which are mentioned only in passing. For example, Ruiz suggests that the court improperly denied him the opportunity to question Victim; that the State improperly failed to present expert testimony in support of its assertion that there was a causal nexus between the incident with Ruiz and all nine

(continued…)

failed to follow this court's instructions on remand and that the trial court did not properly employ the modified but-for test for determining the relationship between his crime and Victim's damages.

¶12    In order to determine complete restitution, the trial court was required to employ "[a] modified 'but for' test." *Ruiz I*, 2013 UT App 166, ¶ 8, 305 P.3d 223 (alteration in original) (citation and internal quotation marks omitted). This test "requires (1) that the damages would not have occurred but for the conduct underlying the [defendant's] . . . conviction and (2) that the causal nexus between the [criminal] conduct and the loss . . . not [be] too attenuated (either factually or temporally)." *Id.* (alterations in original) (citation and internal quotation marks omitted). The trial court's task was made particularly complicated in this case because Victim's inpatient therapy, which was initially necessitated by Ruiz's actions, addressed a number of preexisting conditions which had the potential to prolong Victim's stay at the inpatient facility.

¶13    In its original order, which we considered in *Ruiz I*, the trial court ordered that Ruiz pay for the entire cost of Victim's

---

(…continued)

months of Victim's inpatient therapy; that the trial court's calculation of court-ordered restitution was inaccurate; and that the trial court's reference to the incident as "rape," despite the fact that Ruiz pled guilty only to attempted unlawful sexual activity with a minor, suggests that the court held Ruiz accountable for a higher crime than that for which he was convicted. We interpret these arguments merely as support for Ruiz's argument that the trial court exceeded its discretion. To the extent Ruiz may have intended to argue them as independent grounds for reversal, we determine that they are inadequately briefed. *See* Utah R. App. P. 24(a)(9).

inpatient therapy based on its determination that "Ruiz's actions were the 'but for' cause of Victim's enrollment in La Europa." *Id.* ¶ 11. On appeal, we determined that this finding was insufficient to support a determination that Victim's entire nine-month stay at La Europa was necessitated by Ruiz's actions. *Id.* Accordingly, we remanded "for the trial court to make more detailed findings in support of its determination of complete restitution." *Id.*

¶14 On remand, there appeared to be some confusion as to whether our opinion in *Ruiz I* required the trial court to reduce the amount of restitution or whether the trial court could reinstate its previous order if it made additional findings. On remand—and now, on appeal—Ruiz argued, based on our opinion, that he could be held responsible for no more than "10 to 20 percent of the cost of therapy," since Victim's trauma was only one of five different areas to be addressed in the course of inpatient therapy. The State, on the other hand, interpreted our opinion as permitting the trial court to uphold the original complete-restitution order so long as it supported the order with additional findings showing the causal nexus between Ruiz's actions and Victim's continued inpatient therapy. Victim's attorney agreed, arguing that our opinion was not intended "to obviate the principle that you take your victim as you find her." The trial court expressed skepticism about this position: "Well, I don't know. I think they kind of did."

¶15 In its remand order, the trial court expressed dissatisfaction with our opinion in *Ruiz I*, but ultimately concluded that our opinion required it to reduce the restitution order based on Victim's preexisting conditions. The trial court explained,

> An allegory [to this case] would be where a [conviction for driving under the influence] with injury leads to a knee operation but the heavy victim has to be put through a professional weight

> reduction program before aftercare therapy to be assured of successful knee surgery. The Court takes the appellate decision in the present matter to mean in a criminal restitution context the injured party could not recover for addressing the preexisting weight problem even though it . . . had to be resolved to assure a successful knee operation.

This assessment does not accurately interpret our opinion. We do not disagree with the trial court that there could be a causal nexus between the DUI injury and the weight-reduction program in the scenario described above. However, if that same victim had a preexisting shoulder injury that was not exacerbated by the accident and was not related to the success of the knee surgery, the DUI defendant could not be required to pay extra costs associated with the shoulder surgery just because the victim decided to receive the surgery while he was in the hospital for the knee surgery.

¶16    When we considered the trial court's original restitution order in *Ruiz I*, some of the preexisting conditions in this case, such as Victim's substance abuse and her family issues, looked much more like the shoulder surgery than the weight-reduction program. Without the benefit of detailed findings in the trial court's original restitution order, we were left to speculate as to whether Victim stayed at La Europa for nine months because it took that long to address the trauma or because the treatment of unrelated preexisting conditions prolonged Victim's stay.

¶17    But while the majority opinion expressed skepticism about whether Victim would have needed nine months of inpatient therapy had the therapy addressed only issues caused or exacerbated by Ruiz, *Ruiz I*, 2013 UT App 166, ¶ 11 & n.2, 305 P.3d 223, its ultimate concern was with the lack of findings in support of that conclusion; the trial court's original order found

only that Victim's initial enrollment in La Europa was triggered by her encounter with Ruiz, not that nine months of inpatient therapy was needed to address the trauma. In light of the trial court's additional detailed findings on remand, we cannot say that the trial court exceeded its discretion in calculating complete restitution.

¶18 The trial court's findings in its order on remand appropriately addressed "the extent to which the therapy at La Europa was necessitated by preexisting conditions that were neither caused nor exacerbated by Ruiz's actions." *See id.* ¶ 11. The court concluded that although the preexisting conditions were addressed in the course of Victim's inpatient therapy, those conditions neither necessitated her enrollment at La Europa nor prolonged her stay. Rather, Victim stayed at La Europa for nine months "because it took that long to start making progress on the trauma defendant caused." Furthermore, in addressing Victim's therapy in detail, the trial court found that Victim's trauma was continually addressed throughout her stay at La Europa and affected her need for therapy on other issues, even those that initially appeared to be unrelated to the trauma. For example, the court found that prior to the crime, Victim had been "doing better in outpatient individual and family therapy . . . , was not drinking or smoking and was trying to adjust" but that her problems escalated following her encounter with Ruiz. The court also found that "part of the family therapy was necessary for the parents and victim to learn how to handle blame for the crime." These findings are sufficient to support the trial court's determination that Victim's entire stay at La Europa was necessitated by Ruiz's actions and was not unnecessarily prolonged by unrelated preexisting conditions.[3] Thus, the trial

---

3. We agree with the dissent that the trial court's findings on remand would have been sufficient to support a decision reinstating the trial court's original complete restitution order
(continued…)

court's calculation of complete restitution in the amount of $42,475, which included a deduction for the estimated per-hour cost of a number of sessions that focused only on preexisting conditions, was not an abuse of the court's discretion.

## II. Motion to Disqualify

¶19 Ruiz also argues that the trial judge erred in denying Ruiz's motion to disqualify him under rule 29 of the Utah Rules of Criminal Procedure and by making inappropriate defensive commentary in his order referring the rule 29 motion to the presiding judge. *See* Utah R. Crim. P. 29 (governing motions to disqualify a judge in criminal cases). Our supreme court has held that a judge certifying for review a motion to disqualify should not include "argument or comment on the necessity for disqualification." *Young v. Patterson*, 922 P.2d 1280, 1281 (Utah 1996).[4]

¶20 While we agree with Ruiz that the trial judge's commentary was inappropriate, Ruiz has failed to demonstrate that he suffered any harm as a result. *Cf. Poulsen v. Frear*, 946 P.2d 738, 741–42 (Utah Ct. App. 1997) (holding that where the

---

(…continued)
and that the trial court would not have exceeded its discretion by doing so. *Infra* ¶¶ 24–25. However, because the question of whether the trial court erred by not reinstating its original order is not before us, we address only Ruiz's argument that the trial court's restitution order was excessive.

4. Although *Young v. Patterson*, 922 P.2d 1280 (Utah 1996), addressed motions to disqualify under rule 63(b) of the Utah Rules of Civil Procedure, we assume without deciding that this rule applies equally to referral of a rule 29 motion under the Utah Rules of Criminal Procedure. *Compare* Utah R. Civ. P. 63(b), *with* Utah R. Crim. P. 29.

appellant's affidavit in support of a rule 63(b) motion was insufficient as a matter of law, any improper comments in the referral order were harmless). By the time Ruiz filed his motion to disqualify, the trial judge had already issued the restitution order. Ruiz's motion requested only that the trial judge "be recused or disqualified from the . . . case"; it did not suggest that disqualification should result in rehearing on the restitution issue or otherwise seek reconsideration of restitution. Thus, even if Ruiz had succeeded in disqualifying the trial judge, it would not have altered the restitution order, and Ruiz has not otherwise suggested that he suffered harm as a result of the trial judge's comments.

¶21     Furthermore, we agree with the presiding judge that none of the trial court's statements identified by Ruiz in his rule 29 motion indicate actual or apparent bias against Ruiz. *See supra* ¶ 8. Therefore, the trial judge did not err in failing to recuse himself.

CONCLUSION

¶22     On remand, the trial court made sufficient findings in support of its restitution order and did not exceed its discretion in ordering Ruiz to pay $42,475 in restitution. Furthermore, the trial court did not err in denying Ruiz's motion to disqualify, and to the extent that comments made by the trial judge in the referral order were improper, they were harmless. Accordingly, we affirm both the restitution order and the denial of Ruiz's motion to disqualify.

_____

CHRISTIANSEN, Judge (concurring in part and dissenting in part):

¶23     I concur in Part II of the majority opinion regarding Ruiz's motion to disqualify. However, I respectfully dissent from Part I,

which addresses the trial court's calculation of complete restitution. Unlike the majority, I would conclude that the trial court abused its discretion when it deducted the estimated per-hour cost of several of Victim's therapy sessions from the complete restitution. In my opinion, given the evidence that was introduced at the restitution hearing and the trial court's extensive findings regarding the required inpatient therapy necessitated by Ruiz's criminal actions, the trial court should have retained the original complete restitution order.

¶24    As the majority opinion here acknowledges, the *Ruiz I* majority's "ultimate concern" was with the lack of findings in support of the trial court's conclusion that Victim needed nine months of inpatient therapy to address those issues caused or exacerbated by Ruiz's criminal actions. *See supra* ¶ 17. Thus, on remand, the trial court was instructed to address "the extent to which the therapy at La Europa was necessitated by preexisting conditions that were neither caused nor exacerbated by Ruiz's actions." *Ruiz I*, 2013 UT App 166, ¶ 11, 305 P.3d 223. However, nothing in *Ruiz I* limited the trial court's ability to reinstate its previous order, and the trial court would have acted within its discretion to do so and award the full amount of Victim's inpatient therapy, i.e., $51,000, as long as that amount was supported by detailed factual findings. *See id.* ¶¶ 11, 14.

¶25    On remand, the trial court concluded that the tuition at La Europa "was reasonable for all services rendered," and it had "no difficulty in finding . . . [that Victim] would not have had to go to La Europa but for the actions of [Ruiz]." The court further noted that Victim stayed at La Europa for nine months "because it took that long to start making progress on the trauma [Ruiz] caused." Moreover, the court observed that "[a] crime as in this case would certainly have some impact on and exacerbate mental conditions and aberrant behavior preceding the offense, contributing to a need for the benefits arising from nine months of residential treatment." In addition, the trial court noted that

while certain individual therapy sessions did not "directly address[] the trauma" caused by Ruiz, the "staff [at La Europa] appeared to think they had to work on the other [preexisting] issues to address the trauma" caused by Ruiz. Thus, the trial court apparently found that all of Victim's inpatient therapy, which occurred after Ruiz's crime, was causally related to Ruiz's commission of the crime. It makes no sense, then, for the trial court to deduct any estimated per-hour cost of outpatient treatment from Victim's restitution award, and the trial court seemingly did so based solely on its misreading of the holding in *Ruiz I.*

¶26    I believe that the trial court should have, given its findings on remand, reinstated its previous order requiring Ruiz to pay the entire cost of Victim's inpatient therapy.[5] *See, e.g.*, *Rich v. State*, 890 N.E.2d 44, 50 (Ind. Ct. App. 2008) ("The purpose behind an order of restitution is to impress upon the criminal defendant the magnitude of the loss he has caused and to defray costs to the victim caused by the offense." (citation and internal quotation marks omitted)). This is especially true given that the trial court found that Victim "was not charged extra for that treatment," that "[t]he residential tuition was the same whether her treatment was for a single symptom or more than one," and that she "would have paid the same monthly tuition if her only

---

5. In evaluating Ruiz's argument that the trial court exceeded its discretion by ordering complete restitution in the amount of $42,475, *see supra* ¶ 11, I do not think that we are required to conclude only that the restitution ordered was either too high (as Ruiz contends) or that the award was correct (as determined by the majority). Namely, by challenging the trial court's restitution order on appeal, Ruiz opened the door for this court to fully examine that restitution award. The State did not also need to cross-appeal for us to reach this issue.

issue was recovery from the trauma suffered at the hands of [Ruiz]."[6]

¶27    Moreover, in my view, Victim's mental health conditions cannot be fairly compared to the majority opinion's knee-and-shoulder example. *See supra* ¶ 15. In that example, the victim's preexisting shoulder injury was *not* exacerbated by the accident and had no relation to the success of the victim's knee surgery. In this case, however, Victim's mental health conditions were exacerbated by Ruiz's actions. Indeed, as the majority opinion acknowledges, the trial court found Victim was "doing better in outpatient individual and family therapy" and that her problems escalated after her encounter with Ruiz to the point that she required inpatient therapy. *See supra* ¶ 18. Likewise, whereas a healthy shoulder is not necessarily crucial to the complete recovery of one's knee, mental health conditions are often sufficiently interrelated such that one condition cannot be satisfactorily treated without addressing one or more others. Such is the case here, where the La Europa staff believed "they had to work on [Victim's] other issues to address the trauma" caused by Ruiz's actions. Thus, Victim's situation is clearly

---

6. It is also important to note that "[r]equiring a victim of a sexual assault or rape . . . to disclose the details of her communications with her therapist when requesting restitution for therapy costs would tend to deter [the] victim from requesting restitution for the cost of therapy." *People v. Garcia*, 111 Cal. Rptr. 3d 435, 441 (Ct. App. 2010). Where, as here, there was evidence that Victim's inpatient therapy was necessitated by Ruiz's actions and related to her being victimized by Ruiz, I do not believe that "[p]rying into the specifics of confidential patient-therapist communications was . . . necessary for purposes of ordering [complete] restitution." *See id.* at 442.

distinguishable from the majority opinion's knee-and-shoulder example.

¶28   Based on the foregoing, I would conclude that the trial court abused its discretion when it deducted the estimated per-hour cost of several therapy sessions from Victim's restitution award, and I would therefore reverse the order and remand for the trial court to reinstate its previous restitution award for the entire cost of Victim's inpatient therapy. Consequently, I respectfully dissent in part from the majority opinion.

───────────