*1231 Opinion
BENCH, Senior Judge:
T1 Jonathan A. Ruiz appeals the trial court's order that he pay restitution in the amount of $42,475 in connection with his convictions for attempted unlawful sexual activity with a minor and its order denying his motion to disqualify the trial Judge We affirm both orders. ka s
BACKGROUND
T2 We previously considered this matter in State v. Ruiz (Ruiz 1), 2018 UT App 166, 305 P.3d 228. The victim in this case (Vie-tim) was admitted to La Europa, a residential treatment facility, because she expressed suicidal thoughts following her sexual encounters with Ruiz. See id. 12. But even before she met Ruiz, Victim "had a hlstory of depression, anxiety, self-harm, substance abuse, lying, arguing, stealing, and sexually acting out." Id. 18 (internal quotation marks omitted). Thus, her therapy at La Europa addressed a number of issues, including "trauma from the incident with Ruiz," "depression, hypersexuality, family issues, and substance abuse." Id. Victim remained at La Europa for nine months at a cost of $51,000. Id. T4.
13 The trial court determined that complete restitution included the entire cost of Victim's stay at La Europa because "Ruiz's actions were the 'but for cause of Victim's enrollment in La Europa." Id 111. However, when this decision was appealed in Ruiz I, we concluded that the trial court had "failed to explain the causal nexus between the incident and the nine months of intensive inpatient therapy Victim underwent," which included family therapy and substance abuse treatment, or "to examine how Victim's preexisting conditions impacted her need for that level of therapy." Id. T11 & n. 2. Thus, we held that "the trial court's findings in support of its determination of complete restitution were insufficient" and remanded the case so the trial court could "make more detailed findings in support of its determination of complete restitution," Id.." 11.
T4 On remand, the trial court made more detailed findings regarding the impact of Ruiz's actions on Victim. The trial court found that prior to' the incident with Ruiz, Victim "had been undergoing outpatient counseling" and was "experiencing improvement in her condition before the erime without inpatient treatment." Following the encounter, Vietim "regressed to being passively suicidal," which "aggravated [her] preexisting mental conditions ... to the point outpatient care was 1nadequate "
15 The trial court also found that the monthly tuition paid to La Europa was fixed, regardless of the issues addressed. Thus, although "the victim received treatment in La Europa to replace the outpatient treatment previously received for her preexisting conditions ..., she was not charged extra for that treatment," because she "would have paid the same monthly tuition if her only issue was recovery from the trauma suffered at the hands of [Ruiz]." The trial court found that the entire nine months of residential treatment was necessary to address the trauma Victim suffered. and that even at the time of discharge, continued inpatient therapy was recommended specifically with respect to Victim's "continuing trauma issues from the crime." Nevertheless, the trial court deducted the estimated per-hour cost (based on the per-hour rate Victim was later charged for outpatient therapy) of a number of Victim's therapy sessions at La Europa that the trial court determined were devoted exclusively to unrelated preexisting conditions and reduced the total amount of complete restitution to $42,475, +,
16 After the trial court issued its order, Ruiz filed a motion under rule 29 of the Utah Rules of Crimihal Procedure to disqualify the trial judge. Ruiz asserted that the judge "showed bias against [Ruiz] by inappropriately denying defense counsel the right to cross-examine the victim." He also asserted that by suggesting that counsel's crosg-exam- *1232 ination of Victim would "traumatize" her, the judge "personally attacked] defense counsel's integrity as, an officer of the court." Furthermore, Ruiz argued that the judge indicated his bias against Ruiz by characterizing Ruiz's actions toward Vietim as "rape"; by generally minimizing the impact of Vice-tim's preexisting conditions, in particular the impact of alleged physical and- emotional abuse committed by her father; by expressing his agreement with the dissenting opinion rather than the lead opinion in Ruiz I; and by indicating his intent to order the maximum amount of restitution possible,
17 The trial judge made a threshold determination not to grant Ruiz's motion and referred the motion to the presiding judge. In the referral order, the trial judge explained the reasons he believed the motion to. disqualify. should be denied,
T8 The presiding judge concluded that the trial judge's refusal to:allow Ruiz's counsel to cross-examine Victim showed only "a disagreement regarding the extent of the vice-tim's duties to provide evidence at the hearing" and failed to demonstrate "either actual or apparent bias or prejudice against [Ruiz]." The presiding judge further found that statements the trial judge made to Ruiz's counsel did not attack counsel's integrity and, at best, "only commented on the unintended effects of counsel's examination of the victim." The presiding ' judge explained that the trial judge's use ofthe term "rape" was clearly "used only to reference the victim's therapists' use of the term" and did not indicate the trial judge's belief that Ruiz was guilty of rape rather than the crime he was actually convicted of-attempted unlawful sexual activity with a minor, The presiding judge also concluded that the trial judge's discussion of Victim's preexisting conditions revealed only "a disagreement with counsel regarding the cause of the victim's need for therapy," not any "actual or apparent bias against [Ruiz]." Finally, the presiding judge rejected Ruiz's assertion that the trial judge "begrudged having to follow the directions received from the court of appeals on remand," observing that the trial judge "clearly stated [his] intention to exercise [his] responsibilities 'within the bounds of what the appellate courts'" had directed. - Accordingly, the presiding judge denied Ruiz's motion to disqualify the trial judge.
ISSUES AND STANDARDS OF REVIEW
T9 Ruiz first argues that the trial court exceeded its discretion in fixing the amount of restitution. "[In the case of restitution, a reviewing 'court will not disturb a district court's determination unless the 'court exceeds the authority prescribed by law or abuses its discretion." State v. Lay-cock, 2009 UT 58, " 10, 214 P.8d 104.
[10 Ruiz further argues that the trial judge erred in failing to recuse himself and by commenting on Ruiz's motion to disqualify when referring the motion to the presiding judge. "Issues -of recusal present questions of law that we review for correctness." State v. Wareham, 2006, UT App 327, ¶ 18, 143 P.3d 302,
ANALYSIS
I. Restitution Order
¶11 Ruiz first asserts that the trial court exceeded its discretion by ordering that he pay complete restitution in the amount of $42475.[2] In doing so, he argues that the trial court failed to follow this court's instrue-tions on remand and that the trial court did *1233 not properly employ the modified but-for test for determining the relationship between his crime and Victim's damages.
112 In order to determine complete restitution, the trial court was required to employ "[a] modified 'but for' test." "Ruiz I, 2013 UT App 166, 18, 805 P.8d 228 (alteration in original) (citation and internal quotation marks omitted). This test "requires (1) that the damages would not 'have occurred but for the conduct underlying the [defendant's] ... conviction and (2) that the causal nexus between the [criminal] conduct and the loss ... not [be] too attenuated (either factually or temporally)" Id. (alterations in original) (citation and internal quotation marks omitted). The trial court's task was made particularly complicated in this case because Victim's inpatient therapy, which was initially necessitated by Ruig's actions, addressed a number of preexisting conditions which had the potential to prolong Victim's stay at the inpatient facility.
13 In its original order, which we cons1d—. ered in Ruis I, the trial court ordered that Ruiz pay for the entire cost of Victim's inpatient therapy based on its determination that "Ruig's actions were the 'but for' ecause of Victim's enrollment in La Europa." Id. 111. On appeal, we determined that this finding was insufficient to support a determination that Victim's entire nine-month stay at La Europa was necessitated by Ruiz's actions. Id. Accordingly, we remanded "for the trial court to make more detailed findings in support of its determmatlon of complete resumtion," Id
T14 On remand there appeared to be some confusion as to whether our opinion in Ruiz I required the trial court to reduce the amount of restitution or whether the trial court could reinstate its previous order if it made additional findings. On remand-and now, on appeal-Ruiz argued, based on our opinion, that he could be held responsible for no more than "10 to 20 percent of the cost of therapy," since Victim's trauma was only. one of five different areas to be addressed in the course of inpatient therapy. The State, on the other hand, interpreted our opinion as permitting the trial court to uphold the original complete-restitution order so long as it supported the order with additional findings showing -the causal nexus between Ruiz's actions and Victim's continued inpatient therapy. Victim's attorney agreed, arguing that our opinion was not intended "to obviate the principle that .you take your victim as you find her." The trial court expressed skepticism about this position: "Well, I don't know, T think they kind of did."
115 In its remand order, the trial court expressed dissatisfaction with our opinion in Ruig I, but ultimately concluded that our opinion required it to reduce the restitution order based on Victim's preexisting conditions. The trial court explained,
An allegory [to this case] would be where a [conviction for driving under the influence] with injury leads to a knee operation but the heavy victim has to be put through a professional weight reduction program before aftercare therapy to be assured of successful knee surgery, The Court takes the appellate decision in the present matter to mean in a criminal restitution context the injured party could not recover for addresging the preexisting weight problem even though it ... had to be resolved to assure a successful knee operation.
This assessment does not accurately interpret our opinion, 'We do not disagree with the trial court that there could be a causal nexus between the DUI injury and the weight-reduction program in the seenario described above. However, if that same victim had a preexisting shoulder injury that was not exacerbated by the accident and was not related to the success of the knee surgery, the DUI defendant could not be required to pay extra costs associated with the shoulder surgery just because the victim decided to receive the surgery while he was in the hospital for the knee surgery. |
€ 16 When we considered the trial court's original restitution order 'in Ruiz I, some of the preexisting conditions in this case, such as Victim's substance abuse and her family issues, looked much more like the shoulder surgery than the weight-reduction program. Without the benefit of detailed findings in the trial court's original restitution order, we were left to speculate as to whether Victim *1234 stayed at La Europa for nine months because it took that long to address the trauma or because the treatment of unrelated preexisting conditions prolonged- Victim's stay.
{17 But while the majority opinion expressed skepticism about whether Victim would have needed nine months of inpatient therapy had the therapy addressed only issues caused or exacerbated by Ruiz, Ruiz I, 2013 UT App 166, ¶ 11 & n. 2, 305 P.3d 223, its ultimate concern was with the lack of findings in support of that conclusion; the trial court's original order found only that Victim's fnitial enrollment in La Europa was triggered by her encounter with Ruiz, not that nine months of inpatient therapy was needed to address the trauma. In light of the trial court's additional detailed findings on remand, we cannot say that the trial court exceeded its discretion in calculating complete restitution.
T 18 The trial court's findings in its order on remand appropriately addressed "the extent to which the therapy at La Europa was necessitated by preexisting conditions that' were neither caused nor exacerbated by Ruiz's actions." See id. 111. The court concluded that ' although the preexisting conditions were addressed in the course of Victim's inpatient therapy, those conditions neither necessitated her enrollment at La Europa nor prolonged her stay. Rather, Victim stayed at La Europa for nine months "because it took that long to start making progress on the trauma defendant caused." Furthermore, in addressing Vie-tim's therapy in detail, the trial court found that Victim's trauma was continually addressed throughout her stay at La Europa and affected her need for therapy on other issues, even those that initially appeared to be uprelated. to the trauma. For example, the court found that prior to the crime, Victim had been "doing better in outpatient individual and family therapy ..., was not drinking or smoking and was trying to adjust" but that her problems escalated following her encounter with Ruiz, The court also found that "part of the family therapy was necessary for the parents and victim to learn how to handle blame for the crime." These findings are sufficient to support the trial court's determination that Victim's entire stay at La Europa was necessﬂzated by Ruiz's actions and was not unnecessarﬂy prolonged by unrelated preexisting conditions.[3] Thus, the trial court's caleulation of complete restitution in the amount of $42,475, which included a deduction for the estimated per-hour cost of a number of ses-slong that focused only on preexisting conditions, was not an abuse of the court's discretion.
II. . Motion to Disqualify
T19 Ruiz also argues that the trial judge erred in denying Ruiz's motion to disqualify him under rule 29 of the Utah Rules of Criminal Procedure and by making inappropriate defensive commentary in his order referring the rule 29 motion to the presiding judge. See Utah R. Crim. P. 29 (governing motions to disqualify a judge in criminal cases). Our supreme court has held that a judge certifying for review a motion to disqualify should not include "argument or comment on the necessity for disqualification." Young v. Patterson, 922 P.2d 1280, 1281 (Utah 1996).[4] :
T20 While we agree with Ruiz that the trial judge's commentary was inappropriate, Ruiz has failed to demonstrate that he suffered any harm as a result,. Cf. Poulsen v. Frear, 946 P.2d 738, 741-42 (Utah Ct.App. 1997) (holding that where the appellant's affidavit in support of a rule 68(b) motion was insufficient as a matter of law, any improper *1235 comments in the referral order were harmless). By the time Ruiz filed his motion to disqualify, the trial judge had already issued the restitution order. Ruig's motion requested only that the trial judge "be recused or disqualified from the ... case"; it did not suggest that disqualification should result in rehearing on the restitution issue or otherwise seek reconsideration of restitution. Thus, even if Ruiz had succeeded in disquali# fying the trial judge, it would not have altered the restitution order, and Ruiz has not otherwise suggested that he suffered harm as a result of the trial judge's comments.
21 Furthermore, we agree with the presiding judge that none of the trial court's statements identified by Ruiz in his rule 29 motion indicate actual or apparent bias against Ruiz, See supro 18. Therefore, the trial judge did not err in falhng to recuse himself,
CONCLUSION
11 22 On remand, the trial court made sufficient findings in support of its restitution order and did not exceed its discretion in ordering Ruiz to pay $42,475 in restitution. Furthermore, the trial court did not err in denying Ruiz's motion to disqualify, and to the extent that comments made by the trial judge in the referral order were improper, they were harmless. Accordingly, we affirm both the restitution order and the demal of Ruiz's motion to disqualify.

, Ruiz refers to a number of perceived errors in the course of his argument, 'most of which are mentioned only in passing. For example, Ruiz suggests that the court improperly denied him the opportunity to question Victim; that' the State improperly failed to present expert testimony in support of its assertion that there was a causal nexus between the incident with Ruiz and all nine months of Victim's inpatient therapy; that the trial court's calculation of court-ordered restitution was inaccurate; and that the trial court's reference to the incident as "rape," despite the fact that Ruiz pled guilty only to attempted unlawful sexual activity with a minor, suggests that the court held Ruiz accountable for a higher crime than that for which he was convicted. We interpret these arguments merely as support for Ruiz's argument that the trial court exceeded its discretion. To the extent Ruiz may have intended to argue them as independent grounds for reversal, we determine that they are inadequately briefed. See Utah R. App. P. '

. We agree with the dissent that the trial court's findings on remand would have been sufficient to support a decision reinstating the trial court's original complete restitution order and that the trial court would not have exceeded its discretion by doing so. Infra 1124-25. However, because the question of whether the trial court erred by not reinstating its original order is not before.-us, we address only Ruiz's argument that the trial court's restitution order was excessive.

. Young v. Patterson, 922 P.2d 1280 (Utah 1996), addressed motions to disqualify under rule 63(b) of the Utah Rules of Civil Procedure, we assume without deciding that this rule applies equally to referral of a rule 29 motion under the Utah Rules of Criminal Procedure. Compare Utah R. Civ. P. 63(b), with Utah R. Crim. P. 29. ©